[Civ. No. 764.   Third Appellate District.—September 21, 1911.]

M. V. PINHEIRO, Respondent, v. M. M. BETTENCOURT, IDA BETTENCOURT, His Wife, and M. M. JOAQUIN, Appellants.

ACTION TO QUIET TITLE—DEFENSE—AGREED RIGHT OF WAY—SUPPORT OF FINDINGS AND JUDGMENT.—It is held in this action to quiet title to the plaintiff's land, in which the only defense made was that the parties agreed to the use of a strip of seventeen feet in width, lying partly on plaintiff's land and partly on the land of the defendants, for a right of way, that the findings for the plaintiff are supported by the evidence, cover all the material issues, and support the judgment for plaintiff.

ID.—PAROL LICENSE TO CROSS OVER LAND—REVOCABLE NATURE.—The most that can be said of the right claimed by defendants under the proof is that they had a mere license by parol to cross over plaintiff's land for convenience in cultivating their land, and that plaintiff had a like privilege to use defendants' land, and that the use thereof for a ditch and "to haul out things" was of a similar character. Such a license is revocable at any time.

ID.—MODE OF CREATION OF EASEMENT—GRANT—PRESCRIPTION—ADVERSE HOLDING.—An easement can only be created by deed of grant, or by prescription. A prescriptive title cannot arise out of agreement, but must be acquired adversely; and the holding cannot be adverse where it rests upon a license or mere neighborly accommodation.

ID.—CLAIM OF JOINT EASEMENT IN CROSS-COMPLAINT — IMMATERIAL OMISSION IN FINDING AS TO DEFENDANTS' EASEMENT.—Where the findings negative all claim of any easement in defendants over plaintiff's land, and the plaintiff in his action necessarily disclaims any easement over the land of the defendants, the failure of the court to find an easement over defendants' land, not claimed by

plaintiff, is immaterial, and is not sufficient ground for ordering a new trial.

Id.—General Finding Disregarded.—A general finding that all of the averments of defendants' answer and cross-complaint "adverse to or inconsistent with plaintiff's complaint are untrue," is insufficient. But where all the material issues are expressly found upon, and the findings support the judgment, such general finding may be disregarded.

Id.—Finding as to Ownership of Defendants not Required—Absence of Issue.—It was not necessary to find upon the ownership of defendants' land, where no issue was raised as to such ownership, nor as to their ownership of a right of way over their own land, which is appurtenant to the fee. A fact implied by law need not be found upon.

Id.—Pretermitted Finding Necessarily Adverse to Appellants.—Where a pretermitted finding must necessarily be adverse to appellants, they are not aggrieved by the omission.

Id.—Mortgagee of Defendants Joining in Adverse Claim to Right of Way Over Plaintiff's Land—Costs.—Where a mortgagee of defendants' land made a party defendant, instead of disclaiming interest, joined with defendants in claiming the easement upon plaintiff's land, he was justly chargeable with the costs of the action upon the plaintiff's recovery.

APPEAL from a judgment of the Superior Court of Fresno County, and from an order refusing a new trial. George E. Church, Judge.

The facts are stated in the opinion of the court.

Royal A. Carter, for Appellants.

Joel H. Smith, and M. G. Gallaher, for Respondent.

CHIPMAN, P. J.—Action to quiet title. In his amended complaint plaintiff alleges ownership and possession of the E. ½ of the E. ½ of the N. E. ¼ of the N. E. ¼ of section 11, township 16 south, range 22 east, M. D. B. & M., "being ten acres of land more or less, and more particularly described and bounded as follows: Beginning at the northeast corner of said section eleven and running westerly along the north line of said section a distance of three hundred and twenty-six feet, thence southerly and parallel with the east line of said section a distance of thirteen hundred and twenty-

two feet, thence easterly and parallel with the north line of said section à distance of three hundred and twenty-six feet to the east line of said section, thence north along said east line of said section a distance of thirteen hundred and twenty-two feet to the place of beginning''; alleges the payment of all taxes which have been assessed against said land; also alleges adverse possession since February 2, 1901, ''as against all the world of all of the said land, except that defendants and each of them claim some right, title, interest or estate in and to, and possession of, that portion of said land particularly described as a strip of land about four or five feet in width along the east side of and adjacent to the west line of said land and extending north and south the entire length of said land; and that said claim of defendants and each of them is adverse to plaintiff,'' without right, etc. This latter description is involved in some obscurity, but it was intended to describe a strip of land along the west side of plaintiff's land. This is in a degree cleared up by the answer, and the trial seems to have been addressed to the issues affecting land on the west side of plaintiff's land.

The answer is a voluminous document of some seventy-five folios, but its substance may be stated in much less space. Defendants admit title in plaintiff to the land as first described in the complaint, but deny that the tract contains more than $9\frac{7}{8}$ acres, and deny that the north and south boundary line is but 326 feet in length, and allege its length to be 330 feet, but they do not admit or deny the length of the land north and south to be as alleged; admit adverse possession as alleged and payment of all taxes except ''on the right of way or easement hereinafter specified''; deny that they claim any right to or interest in plaintiff's said land ''except as hereinafter specified''; allege that in October, 1900, defendant Joaquin was the owner of the N. E. $\frac{1}{4}$ of said section, and in that month sold to plaintiff the E. $\frac{1}{2}$ of E. $\frac{1}{2}$ of N. E. $\frac{1}{4}$ of the N. E. $\frac{1}{4}$ to plaintiff, and plaintiff went into possession and ever since has been in possession of the same ''except as to the easement and right of way herein referred to,'' and on February 2, 1901, said defendant Joaquin conveyed said land to plaintiff, ''subject only to said easement,'' and thereafter conveyed the W. $\frac{1}{2}$ of the E. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$ of the N. E. $\frac{1}{4}$ of said section—an undivided

11/14 to defendant M. M. Bettencourt, and 3/14 to defendant Ida—"subject only to the easement and right of way therein in favor of plaintiff, as hereinafter specified"; deny that defendant Joaquin has any interest in either said tracts of land, and he disclaims any right therein, "other than such contingent interest as he has therein on said W. ½ of said E. ½ of the N. E. ¼ of the N. E. ¼ of said section eleven, by virtue of a mortgage from defendants," M. M. and Ida on their said land. It is then alleged that, in the year 1901, plaintiff being the owner of the land now claimed by him and defendant Joaquin the owner of the tract owned by the other defendants, agreed to leave a strip of land 17 feet in width along the dividing line of the two tracts; that is to say, plaintiff was to leave a strip 9½ feet wide on his side of the line and Joaquin 7½ feet on his side from a point about 400 feet south of the north line, to which point a fence ran along the dividing line, said strip of land 17 feet wide to be used jointly by Joaquin and his successors in interest and plaintiff for their mutual convenience in turning their horses when cultivating the vines planted by Joaquin and the trees planted by plaintiff and also to be used for a roadway and for irrigating ditches; and it is alleged that since 1902 this strip of land has been jointly used by plaintiff and by defendants, the Bettencourts, in accordance with this agreement, to the point where said division fence was erected, which latter had been by plaintiff and Joaquin placed on or near the dividing line of their said land. For convenience, the plaintiff's land will hereinafter be designated as tract A and defendants' land as tract B. It is alleged, as a further defense, that, about the year 1902, plaintiff was the owner of tract A and defendant Joaquin was the owner of tract B; that there was then along the dividing line between said tracts a strip of land about 17 feet in width, which plaintiff and defendant Joaquin "had left, and which was then, and ever since has been, vacant and unplanted, for the purpose of being jointly used by them and the future owners of said land, as and for, a turn row, or turning space, whereon to turn teams in the cultivation of each of said several tracts of land," which said strip extended and now extends northerly from the south line of said tracts to a point about 400 feet south of the north line of said tracts, at or near "the termi-

nation of a fence built by plaintiff and defendant Joaquin, jointly as a partition fence, at or near the division line,'' said strip extending easterly about 9½ feet from the division line on plaintiff's land and about 7½ feet westerly on defendant Joaquin's land, and that in 1902, ''and more than five years before the commencement of this action,'' plaintiff and said defendant, ''jointly entered into and upon, and used said strip of land jointly, as a turn row, or turning space, in the cultivation of said two several tracts of land respectively, and for ditches and a roadway, and thereafter said plaintiff continuously to the present time, and jointly with defendant M. M. Joaquin, and his successors in interest, and with their full knowledge under a claim of right thereto, used, occupied, possessed and enjoyed an easement and right of way upon, along and over and across said portion'' of defendants' land and defendants enjoyed like uses and privilege over plaintiff's portion of said land, ''and said use . . . of said land for said purposes was done openly . . . and under claim of right thereto by plaintiff and said Joaquin and his successors in interest adversely by said plaintiff to said defendant Joaquin and his successors in interest, but jointly with him and them and not exclusively, and adversely by said defendant Joaquin and his successors in interest to said plaintiff, but jointly with him, and not exclusively, which said use . . . has existed and continued, as aforesaid, for more than five years immediately before the commencement of the action''; that the parties paid all taxes assessed against their said lands respectively and that no taxes were levied to either party or imposed on said easement and right of way except as the same was assessed in the assessment upon the land. Two other separate defenses are set up, which, so far as we can see, allege an easement by adverse user for the purposes hereinbefore stated, acquired by plaintiff jointly with defendants over the strip of land, part of tract B, and the like acquisition by defendants of an easement by defendants jointly with plaintiff over the strip of land situated on tract A, having a length along said division line, north from the south line of the tracts, of 920 feet. Finally, substantially the same facts are averred as a counterclaim. Defendants pray that this 17-foot strip of land, 920 feet long, be decreed to be

subject to an easement for the joint use of the parties and
for the purposes already described.

The court found that plaintiff was the owner of the land
as described in the complaint and ''that ever since said second
day of February, 1901, plaintiff has been and is now in the
open, notorious, peaceable and adverse possession as against
the whole world of said land'' and has paid all the taxes as-
sessed thereon; that plaintiff did not, in the year 1901, or at
any time, enter into an agreement with defendant Joaquin
that any portion of plaintiff's land ''should be used as a
turning row or space to turn teams in cultivating said tract
of land or in cultivating the west half of the east half of the
northeast quarter of the northeast quarter of said section
(defendants' land) or any tract of land or at all, or that any
portion of said (land) should be used for an avenue or drive-
way or for the construction thereon of an irrigating ditch
or of irrigating ditches.'' That at various times during a
period of about four years next before the commencement of
the action defendants Joaquin and M. M. Bettencourt ''have
used the strip of land between the west row of trees and
vines'' on plaintiff's land ''and the west line of said land as
a space to turn their teams or turning row in cultivating''
defendants' said land, ''and for irrigating ditches constructed
thereon from time to time; but such use was in the nature
of a neighborly accommodation, and was not pursuant to any
agreement between plaintiff and defendants or either of them,
and was not under any claim of right nor adverse to plain-
tiff nor continuous nor uninterrupted.'' It is then further
found that plaintiff, ''by the license and neighborly accom-
modation of defendants Joaquin and M. M. Bettencourt, at
various times during said four years, used as and for a part
of a turning row a part of a small strip of land lying between
the east row of vines'' on defendants' land, ''and that said
use was with the consent of said defendants, and not under
any claim of right and not adverse to said defendants or either
of them and not under any agreement therefor, and was not
continuous and uninterrupted.'' ''That all the allegations
and averments of plaintiff's complaint are true, and that all
of the denials of defendants' answer and all of the allega-
tions and averments of said answer and all the allegations

and averments of defendants' cross-complaint adverse to or inconsistent with plaintiff's complaint are untrue.''

Plaintiff had judgment accordingly, with costs assessed ''against all the defendants.'' Defendants appeal from the judgment and order denying their motion for a new trial.

Defendants admit plaintiff's ownership of the land claimed by him, except that they aver that the north and south boundary lines are 330 feet in length, whereas plaintiff claims that they are 326 feet long and the court so found. As to the length of the division line, or plaintiff's west boundary line, he alleged and the court found it to be 1,322 feet. Defendants make no denial of this, except in their brief they say that, according to the rule governing United States surveys, that line could not have been over 1,320 feet in length. We do not see that the fact is material, for the length of this line in no wise affects defendants' land, and no controversy has arisen over the location of the south boundary of plaintiff's land. There is, indeed, no issue as to the precise location of the line dividing plaintiff's and defendants' land. But the evidence is that a survey was made of plaintiff's land by county surveyor McKay, in the presence of defendant Joaquin and plaintiff, and he found a stake on its northwest corner 326.1 feet from the east section line and another stake at the southwest corner 326.3 feet from the section line, and he found ''a crooked wire fence on the west side of the property, but not on the line, probably 200 yards long,'' along the north end of the line. He testified: ''It seems to me that Mr. Joaquin called my attention to the fence, and that it ran very close to the line, but just how close I can't say exactly.'' However, the point contended for by defendants does not concern this part of the land; they claimed in their answer an easement over the land of plaintiff south of this fence, i. e., ''the southerly 920 feet of the westerly 9½ feet'' of plaintiff's land, and this is the real issue in the case. Defendants claim an easement over the land of plaintiff, which they themselves admit is east of the division line. Defendant Joaquin testified that about the time he conveyed the land to plaintiff, in February, 1901, he and plaintiff measured the width of the tract with a board and they then agreed upon the division line thus established. Upon this point plaintiff's testimony and that of his wife was that Joaquin

said if the survey they had made was not satisfactory plaintiff could call a surveyor any time and have the line established. Defendant Joaquin testified: "In regard to leaving a space unplanted, he (plaintiff) said he would leave an avenue there, and I said that was all right. He did not say at that time how much he would leave, because he planted one year before I did and left 9½ feet and afterward, when I started to plant, I left 7 feet, because mine were vines and his were trees. That was left as an avenue to turn in and to ditch. He said he left 9½ feet to turn the horses, and he asked me to leave 7½ feet for the same purpose. When I used that, I turned the horses going between his trees and coming right back; then when he turned from his trees and reached my vines, he had room to turn. He drove across to my vines and turned, and I drove across to his and turned." He also testified that the space was used as an avenue "to haul things out" and he also built ditches through there.

Plaintiff testified that there was nothing said between him and Joaquin about an avenue between his land and Joaquin's. "I never had any discussion with Mr. Joaquin about the use of an avenue between Mr. Bettencourt's present land and my land. . . . I didn't know until last April that Mr. Bettencourt was claiming a right to the use of that road or so-called avenue on the line between his land and mine. . . . The space between the vines and trees on my land and the space between the vines on the land of Bettencourt, has been used by us to turn our teams on. He asked me for it one year to run water on. . . . The only conversation I had with Mr. Joaquin about the use of that ditch was the first year. Nothing was said about the ditch after that." Bettencourt testified: "I have used the strip between his vineyard and orchard and my vineyard as a turnway and for a ditch. Neither he nor I objected to the other using the strip for a turnway. He consented to me using that avenue and we used it in a neighborly way. He started to put some posts there (1908) and I objected because I could not turn my horses," and Bettencourt pulled the posts out of the ground and threw them on plaintiff's land.

It seems to us that the findings of the court are justified by the evidence and sufficiently meet all material issues. The most that can be said of the right claimed by defendants is

that they had a mere license by parol to cross over plaintiff's land for their convenience in cultivating their land and plaintiff had a like privilege to use defendants' land, and that the use for a ditch and "to haul out things" was of a similar character. Such a license is revocable at any time. An easement can only be created by grant or by prescriptive title. Defendants are claiming under an agreement, but a prescriptive title cannot arise out of agreement; it must be acquired adversely; it cannot be adverse when it rests upon a license or mere neighborly accommodation. (*Franz* v. *Mendonca,* 131 Cal. 205, [63 Pac. 361]; *Clarke* v. *Clarke,* 133 Cal. 667, [66 Pac. 10]. See, also, *Abbott* v. *Pond,* 142 Cal. 393, [76 Pac. 60].) We are unable to discover any legal basis upon which defendants can build.

Defendants, in their cross-complaint, claim an easement over plaintiff's land and they also set up in plaintiff an easement and right of way over their lands, and defendants now complain that the court made no finding on this latter issue. The action was brought to quiet plaintiff's title to his own land. He denied any claim to defendants' land, thus disclaiming any interest in it. Defendants are not prejudiced by failure of the court to adjudge an easement over defendants' land not claimed by plaintiff. This issue seems to us to be immaterial and a failure to find on an immaterial issue is not sufficient ground for ordering a new trial. (*Garvey* v. *Lushells,* 151 Cal. 526, 534, [91 Pac. 498].)

The finding that all the averments of defendants' answer and cross-complaint "adverse to or inconsistent with plaintiff's complaint are untrue," may be conceded to be an insufficient finding. But where all the material issues are found upon and the findings support the judgment, such a general finding as is complained of may be disregarded.

There was no necessity for a finding of ownership by defendants of their land. No issue was raised as to such ownership, for it was admitted by plaintiff, as was plaintiff's ownership of the land claimed by him admitted by defendants, except as to the right of way claimed and on this there was a finding.

Nor was it material for the court to find on defendants' averment that they had a right of way over their own land. This was not denied and, besides, such right was appurtenant

to the fee. Nothing more is required than that the material issues should be covered by the findings. And where a pretermitted finding must necessarily have been adverse to appellants they are not aggrieved. A fact which is implied by law need not be found upon. (*Aydelotte* v. *Billing,* 8 Cal. App. 673, [97 Pac. 698].)

Appellant Joaquin complains that judgment should not have gone against him, with the other defendants, for costs. If he had made an unqualified disclaimer, this would be true. But he expressly stated that he had an interest in defendants' land as mortgagee, and he claimed and urged at the trial that defendants' title carried with it the easement contended for by them. In *Castro* v. *Barry,* 79 Cal. 443, [21 Pac. 946], the court quoted approvingly from cases there cited; "the statute does not confine the remedy to the case of an adverse claimant setting up a legal title or even an equitable one; but the act is intended to embrace every description of claim whereby the plaintiff might be deprived of his property, or its title clouded, or its value depreciated, or whereby the plaintiff might be incommoded and damnified by the assertion of an outstanding title already held or to grow out of the adverse pretension." And the court said: "If the defendant by his answer disclaim all interest whatever, judgment may, nevertheless, be entered against him, though in such case it must be without costs." We think that when a mortgagee is made a defendant with the owners of the fee and unites with them in contesting the action, he is with them liable for the costs should they fail in their defense.

It seems to us that the findings sufficiently meet all the material issues and are sufficient to support the judgment. We discover no prejudicial errors in the trial of the cause.

The judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.