[L. A. No. 3445. In Bank.—October 7, 1915.]

## W. JARVIS BARLOW, Respondent, v. GEORGE K. FRINK, Appellant.

EASEMENTS — RIGHT OF WAY FOR PIPE-LINE — ADVERSE POSSESSION— DECLARATIONS OF PLAINTIFF'S PREDECESSOR IN INTEREST.—In an action to recover damages caused by the defendant in interfering with the flow of water in a pipe-line constructed by the predecessor of the plaintiff across the defendant's land to the land of the plaintiff, in which the plaintiff claims an easement to maintain the pipe-line arising from adverse user and not under the terms of a contract entered into by the predecessors of the parties, evidence is admissible of the declarations of the predecessor in interest of the plaintiff showing, or tending to show, that his use of the pipe-line was not adverse.

ID.—INSUFFICIENT EVIDENCE OF ADVERSE POSSESSION.—The acquisition of title to such easement by adverse possession is not established by evidence that the plaintiff's predecessor built the pipe-line under the erroneous view that the law gave him the right to use the land of another for his pipe-line, provided he laid it "plow deep," where such conception of his legal rights was not communicated to the owner of the land.

ID.—ELEMENTS ESSENTIAL TO ADVERSE USER.—One claiming a right of way by prescription has the burden of proving clearly, by competent evidence, all of the elements essential to such a title. The user must have been actual, open, continued, under claim of right, adverse and hostile to the true owner's title. To make the user adverse, in the legal sense, it must have been with the knowledge and acquiescence of the owner of the land.

ID.—CONTRACT GRANTING RIGHT OF WAY FOR PIPE-LINE—WANT OF EXECUTION BY BENEFICIARIES OF CONTRACT.—In such action the defendant, in support of his contention that the pipe-line was laid across his land under the terms of a recorded contract made between a company supplying the water and previous owners of the land for the benefit of adjacent lands, including that of the plaintiff, is entitled to have such contract admitted in evidence for all purposes, notwithstanding it was not signed by the owners of such adjacent lands.

ID.—NOTICE—RECORDED CONTRACT.—Such a recorded contract was notice to the owners of property who laid pipes across the land of the defendant's predecessors in interest, that if they acted under its terms they must also bear the burdens of it.

ID.—ACCEPTANCE OF BENEFITS OF CONTRACT.—One for whose benefit a contract is made, although he fails to sign it, is nevertheless bound

thereby, if he takes advantage of its provisions and proceeds to act under them.

Id.—Cutting Off Water Used for Irrigation—Elements of Damage.—In estimating the damage resulting from cutting off the supply of water used for irrigating an orchard, the costs of cultivation and marketing the crop are proper elements to be considered.

Id.—Witness—Memoranda Made by Third Person.—A witness, whose testimony was based entirely on memoranda made by a third person, cannot testify as to the amount of water delivered to the plaintiff.

Contract—Construction Primarily for Trial Court—Appeal—Law of Case.—Whether a contract is in any of its terms or provisions ambiguous or uncertain is a matter of determination in the first instance by the trial court. If it is found so to be, it is primarily the duty of the trial court to construe it, after a full opportunity afforded the parties to produce evidence of the facts, circumstances and conditions surrounding its execution, and the conduct of the parties relative thereto. Until so construed, and the accuracy of the determination of the trial court is directly questioned on appeal, the supreme court should not in the first instance undertake to construe it so that its determination would operate as the law of the case on a new trial.

APPEAL from a judgment of the Superior Court of San Diego County and from an order refusing a new trial.　T. L. Lewis, Judge.

The facts are stated in the opinion of the court.

Wright & Winnek, and Goodfellow, Eells, Moore & Orrick, for Appellant.

L. L. Boone, for Respondent.

LORIGAN, J.—A rehearing was granted in this case after a decision rendered in department of this court. Upon further consideration we are satisfied that except as to one matter discussed in the department opinion which we think was not involved in the appeal and should be eliminated therefrom, all the points which really were involved in such appeal were correctly decided by the department opinion. With this matter eliminated but to be referred to subsequently, said opinion in department prepared by Mr. Justice Melvin is as follows, and is adopted as the opinion of this court in Bank:

"Plaintiff sued for damages caused by the acts of defendant in cutting off a supply of water with which plaintiff

expected to irrigate his orchard. Judgment was given en-joining defendant from further interference with the flow of water in plaintiff's pipe and awarding two thousand five hun-dred dollars and costs against him by reason of the damage caused by his acts to plaintiff's orchard and crop. Defend-ant appeals from the judgment and from the order denying his motion for a new trial.

"It was shown without contest that plaintiff's predecessors in interest in November, 1892, entered into a written contract with the San Diego Flume Company, whereby that corpo-ration agreed to furnish one miner's inch of water every twenty-four hours to them on payment of a certain yearly rental. It was also undenied that this water had been de-livered in accordance with the terms of the contract through a pipe running from the flume constructed by the San Diego Flume Company and laid across the land of defendant for a distance of something more than three thousand feet to plaintiff's property. Defendant also admitted that he had interfered with the flow of water from this pipe and had used a portion of said water, offering plaintiff compensation there-for at the rate paid by the latter for the water to the suc-cessors of the San Diego Flume Company, and tendering also a sum of money for the use of plaintiff's pipe. There was a conflict in the testimony regarding the amount and the result of the interference by defendant with the plaintiff's pipe.

"The court found that at the time of entering into the contract, plaintiff's predecessors in interest believed the law to be in substance as follows: 'That any person in the state of California had the right to put in a pipe-line over the land of another provided said pipe-line should be laid plow deep, and that the party owning such land should have the right to take any water he might own, and use such pipe-line as a carrier of such water by paying to the party who constructed said pipe-line a proportionate cost of such pipe-line in proportion to the amount of water that such con-structor of said pipe-line might be flowing through the same, bears to the amount of water which the owner of such lands desired to flow through the same.' The court also found that the predecessors in interest of plaintiff had no grant, right of way, license or permit to construct their pipe-line on the lands of defendant's predecessors in interest, but that the said pipe-line had been in existence on said land and con-

tinuously in use for conducting water to plaintiff's orchard from 1892 until May, 1911, when defendant committed the acts of which plaintiff complained. There was also a finding that the pipe-line across defendant's lands was not constructed under any contract between Wendell Easton, George W. Frink, and Frank B. Wilde on the one part and the San Diego Flume Company on the other. The court also found that plaintiff was not entitled to anything by way of exemplary damages, and the contract just mentioned was admitted in evidence for the limited purpose of showing that defendant was not actuated by malice in cutting plaintiff's pipe. For all other purposes it was excluded.

"By said contract Easton, Wilde, and Frink (the last named being defendant's father), who were owners of a large tract of land including that now possessed by defendant, granted to the San Diego Flume Company or the purchasers of water from said company, rights of way for lateral flumes and pipe-lines, for conducting water to lands adjacent to those of Easton, Frink, and Wilde. Such flumes or pipes were to be so constructed as not to interfere with the cultivation of the land. The agreement contains the following language: 'Said Flume Company and purchasers of water therefrom before construction of any such pipes or flumes shall enter into a written contract with surety satisfaction to said Easton, Frink and Wilde, and protect the lands of said Easton, Frink and Wilde, and their successors, from any damage on account thereof, said Easton, Frink and Wilde, and their successors having right to tap such lateral pipes and flumes, and to take water therefrom upon paying a prorata portion of the cost thereof from the gate in the flume to the tap or taps respectively, according to the quantity of water to be taken from such tap or taps.'

"In his answer the defendant pleaded another portion of the contract of 1891, providing that if the flume company should at any time lose control of the water and the appliances for conveying it, the contract should become void. He also alleged that in 1910 the entire water and irrigation system of the flume company had been sold, in satisfaction of its bonded indebtedness, to one Murray, and alleged that thereupon plaintiff lost the right to maintain any pipe-line over his land.

"The contract of 1891 was duly recorded in that year and long prior to the construction of the pipe-line across the lands of defendant.

"Appellant's first assignment of error is that the court improperly excluded evidence to show that the user of one of plaintiff's predecessors in interest, Mr. Hopkins, was not adverse. Counsel for appellant called a witness named Cutforth to testify regarding a conversation held with Hopkins before his sale of the orchard to plaintiff. This testimony was offered to show that Hopkins made no claim of right to maintain the pipe except under the contract of 1891 between the flume company and Easton *et al.* Such testimony was clearly pertinent. Plaintiff's theory expressed in his amended complaint, not by direct declaration but by the averment of alleged facts, was that his right to maintain the pipeline over defendant's property arose from adverse user. In this he abandoned the position taken in his original verified complaint, that the pipe had been laid by his predecessors pursuant to and under the contract of 1891 between the flume company and Easton and his associates, and in the amended complaint he made the allegation found by the court to be correct, that the pipe was laid under the mistaken belief that defendant might use its spare capacity, if any, as a conductor of any water he (defendant) might purchase. Defendant's position, on the contrary, was never changed. He insisted throughout the litigation that the pipe originally and always had been used under the contract of 1891. Therefore, declarations of a previous owner of the property now possessed by plaintiff were pertinent if they showed, or tended to show, that his use of the right of way was not hostile. (Code Civ. Proc., sec. 1849.) The court permitted plaintiff's witness Hopkins to testify regarding his version of the laying of the pipe. He states that he never questioned the right of Frink to tap the pipe, supposing that the law gave that right but not any privilege to take any water which he, Hopkins, had purchased. When the defendant offered testimony of another conversation upon the same subject between Hopkins and Cutforth while Hopkins was the owner of the land, it was excluded as not binding on the plaintiff, because he was not present. This was error necessitating a new trial.

"The findings are not sufficient to show that plaintiff acquired title to the easement by adverse possession. It is true that Hopkins asserted a view of the law which he had when he built the pipe-line. There is no evidence that he communicated this conception of his legal rights to the owners of the land or that he was not aware of the existence of the recorded contract between the flume company and Easton *et al.* His false view of the law was surely not binding upon defendant's predecessors. One claiming a right of way by prescription has placed upon him the burden of proving clearly, by competent evidence, all of the elements essential to such a title. The user must have been actual, open, continued, under claim of right, adverse and hostile to the true owner's title. (*Clarke* v. *Clarke,* 133 Cal. 667, [66 Pac. 10] ; *Tarpey* v. *Veith,* 22 Cal. 'App. 292, [134 Pac. 367] ; *Pinheiro* v. *Bettencourt,* 17 Cal. App. 119, [118 Pac. 941].) Enjoyment of an easement in another's land must have been adverse in the legal sense of the term, in order that it may be conclusive of the right asserted, which involves, among other things, knowledge and acquiescence of the owner of the land. (*Strong* v. *Baldwin,* 137 Cal. 432, 438, [70 Pac. 288].) The findings do not support any conclusion that the use of defendant's land was *adverse* in the legal sense.

"The court erred in refusing to admit the agreement of 1891 in evidence for all purposes. As we have seen, this agreement was made by the flume company and Easton and his colleagues for the benefit, in part, of the owners of adjacent lands who might buy water from the flume company. When the agreement was offered in evidence the court excluded it on the sole ground that there was no privity between the parties to the contract and the plaintiff in this action. According to the testimony, the pipe-line was constructed about a year after the agreement was executed and recorded. Since it was made for the benefit of purchasers of water, their signatures were not necessary in order that they might enjoy the privileges conferred by it and enforce its terms in their favor. (Civ. Code, sec. 1559.) It has been held that one failing to sign a contract made for him is nevertheless bound if he accepts it and acts upon it. (*Fidelity & Casualty Co.* v. *Fresno Flume & Irr. Co.,* 161 Cal. 466, 473, [37 L. R. A. (N. S.) 322, 119 Pac. 646].) The same principle applies to one for whose benefit a contract is made if he takes

advantage of its provisions and proceeds to act under them. But he who takes the benefit must bear the burden. (Civ. Code, sec. 3521.) The recorded contract was notice to the owners of property who laid pipes across the lands of Easton *et al.*, that if they acted under its terms they must also bear the burdens of it. Defendant was therefore entitled to have in evidence the contract which, taken in connection with the act of Hopkins in laying the pipe, was *prima facie* proof of acceptance of the terms thereof. It may be that proof could be adduced by plaintiff that he did not consider the contract and that defendant was well aware of his claim of an easement based upon other circumstances, but that would not alter defendant's right to have it received as a part of his showing under his pleadings. The recorded contract and the subsequent acts of Hopkins tended to rebut the plaintiff's claim of prescriptive title. Its exclusion, therefore, was error.

"Plaintiff insists, however, that the contract of 1891 was inadmissible because it was merely executory. Examination of its terms, however, reveals the fact that the words of grant are expressed *in praesenti*—'the said Easton, Frink and Wilde *hereby grant*,' etc. There was a provision for the giving of bonds by Easton, Frink, and Wilde and by purchasers of water from them, but the vesting of title was not conditioned upon the giving of such bond. That was a provision entirely for the benefit of the land owner and might be waived by him. . . .

"Appellant contends that there is no proof that he cut off all of the water, the showing being that he cut off one-third of it, and diverted that quantity upon his own land. But there was proof that no water was received during a long period at the end of the pipe at plaintiff's property line. The court was justified in holding, upon such conflict, that defendant had taken all of the water.

"It is asserted by appellant that the court committed serious error in reaching a conclusion with respect to the amount of damages and the sum to be awarded without taking any testimony with reference to the cost of producing and marketing the crop. In this behalf he cites such cases as *Teller* v. *Bay and River Dredging Co.*, 151 Cal. 209, [12 Ann. Cas. 779, 12 L. R. A. (N. S.) 267, 90 Pac. 942], and *Dennis* v. *Crocker-Huffman Land etc. Co.*, 6 Cal. App. 66, [91 Pac. 425]. As the case goes back for trial, the superior court will doubtless

consider the elements of cultivation and marketing in estimating the damage, if any there was.

"Witness Matthews was permitted to testify from certain reports the amount of water delivered by the flume company and its successors to plaintiff. This was improper, as the witness based his testimony merely upon memoranda made by the company's foreman. There was testimony from other sources upon this matter, however, and the error was not injurious.

"Appellant by his answer averred that plaintiff's rights under the contract of 1891 were terminated by the transfer of the flume company's interest to Murray in 1910. No finding upon this defense was made, because, under the view taken by the court, plaintiff's right did not depend upon that contract at all. If, upon another trial of the cause, the court shall find the said contract was the basis of plaintiff's easement it may be necessary to find upon this issue. There was no proof offered at the trial that there had been any 'interference with the supply of water' provided for in the agreement of 1891. On the contrary, it appeared that the present owners were carrying out the contracts of the flume company. What the proof may be on another trial we cannot say. At the trial held herein there was not sufficient evidence to show any forfeiture of any rights which plaintiff may have acquired under that agreement.

"The judgment and order are reversed."

The portion of the department opinion which we deem should be and so have eliminated, was devoted to the consideration and construction of the contract of 1891 between Easton, Frink, and Wilde on the one hand and the San Diego Flume Company on the other. We do not think the question of the construction of that contract is involved on this appeal. The only question was as to the extent to which it was admissible in evidence. No construction or interpretation of it was made by the trial court, and necessarily would not be because the contract was only received in evidence on the question of malice. As we hold that it should have been admitted for all purposes, its construction may become a question of importance on the new trial which we have ordered. Whether a contract is in any of its terms or provisions ambiguous or uncertain is a matter of determination in the first instance by the trial court. If it is found so to be, it is primarily the duty of the trial court to construe it after a full opportunity

afforded all the parties in the case to produce evidence of the facts, circumstances and conditions surrounding its execution, and the conduct of the parties relative thereto.   Until it is so construed by the trial court with this opportunity afforded to the parties and the accuracy of the determination of the trial court is directly questioned on appeal here, we do not think we should in the first instance undertake to construe it and have our determination of the matter operate as the law of the case on a new trial.   It is for this reason that we deem it proper to eliminate from the department opinion all that is addressed therein to the construction of this contract, leaving the matter of its construction to be determined by the trial court under such evidence as the parties desire to present, unrestrained or controlled by any expression of opinion on the subject by this court.

The judgment and order appealed from are reversed.

Melvin, J., Shaw, J., Sloss, J., Lawlor, J., and Angellotti, C. J., concurred.