[Civ. No. 6952.   First Appellate District, Division Two.—September 7, 1929.]

CHARLES   A.   EDDY, Appellant,   v.   MORRIS DEMICHELIS, Respondent.

F. C. Huebner for Appellant.

W. M. Conley, Philip Conley, Conley, Conley & Conley and Arthur Frame for Respondent.

KOFORD, P. J.—Plaintiff by this action sought damages and an injunction based upon his claim of an easement upon the land of the defendant, an adjoining land owner. The easement claimed was the right to use as a turn row an open strip of land or avenue, which had been left unplanted to trees or vines, upon and along the boundary line between the lands of the two parties to this action. A turn row is understood by the parties as a place used, while cultivating the land, for the purpose of turning teams and tractors drawing cultivating machinery. Plaintiff is the owner of lots Nos. 30 and 31. Defendant is the owner of lot No. 32. The turn row is between lots Nos. 31 and 32. Plaintiff claimed the easement by adverse user and prescription. The court gave judgment for the defendant and the plaintiff appeals.

Substantially the only point argued at the trial and upon this appeal is the sufficiency of the plaintiff's evidence to show that his use and possession of the strip of land for the purpose of a turn row was adverse, as contended by plaintiff and appellant, or merely permissive, as contended by defendant and respondent. No point is made as to the sufficiency of the complaint to present this issue, either at the trial or on this appeal, and accordingly we will treat it in the same manner.

Practically all the evidence at the trial came from the witnesses called by the plaintiff. Appellant indicates certain testimony introduced by him which is uncontradicted and which he claims entitled him to a decision that he was

the owner of the claimed easement by adverse possession. The plaintiff testified that in 1903 he purchased lot No. 31 from Shepherd-Teague & Company, who was then the owner of lots Nos. 30, 31, 32, and other lots. In 1906, plaintiff, a resident of Chicago, Illinois, was visited by Teague, of Shepherd-Teague & Company, and was persuaded to purchase an additional lot, No. 30. In their conversation plaintiff testified that he inquired about the expense of building fences, and Teague said, " 'You don't need any fences.' I asked him what about the straying of the cattle, wouldn't they destroy things, and I asked him about that, and he said, 'No, it is not necessary, because, out there, if they come on your property and do any damage, the owner has to pay for the damage they do.' So, in that way he persuaded me not to put up any fences. 'But,' he said, 'there is an avenue around the lot, and,' he said, 'I own all the land, and you have access to come across the land and turn on the property adjoining your field, to turn back again in the avenue in the opposite direction, and the party on the other property adjoining has the same right to go on your land and turn around to go back there, and,' he said, 'that avenue is private property of both parties to use that way, and the party on the other property has always the privilege to come across on your land for the purpose of turning around and going back, in working the field there, and you have the same privilege, that is what it is for, and,' he said, 'it has been used that way in the neighborhood of twenty years.' "

In 1907 Shepherd-Teague & Company, under contract with plaintiff, planted lot No. 31 to grape-vines, leaving a strip unplanted at the boundary between lots Nos. 31 and 32. Plaintiff arrived in California in August, 1908, and took possession of his land. From 1908 to 1916 he cultivated the land through an agent, and from 1916 to date has personally occupied and cultivated it, always using the turn row until objection and interference by defendant shortly before the commencement of this action, in 1925.

The ownership of defendant's lot No. 32 remained in Shepherd-Teague & Company from 1903 to 1910, when it was sold to Sprague and Thureau, who owned it until 1918, at which time it passed to the defendant and respondent herein. The plaintiff was instrumental in helping Shepherd-

Teague & Company sell lot No. 32 to Sprague and Thureau in 1910, being a friend and fellow workman of Sprague. He testified that he told Sprague at that time about the turn row and repeated to Sprague what Teague had told him in 1906. When lot No. 32 was planted in 1910 by Sprague & Thureau an open avenue was also left at its common boundary with lot No. 31. The open space is thus partly on lot No. 32.

Appellant's testimony of his conversation with Teague and of his having repeated it to respondent's predecessor Sprague was uncontradicted, neither Sprague nor Teague appearing as a witness at the trial. Appellant claims that this testimony conclusively establishes the adverse character of his user and cites authorities to the effect that a parol grant though invalid is a sufficient basis for the acquisition of the right by adverse possession. (*Baldwin* v. *Temple,* 101 Cal. 396 [35 Pac. 1008]; *Alper* v. *Tormey,* 7 Cal. App. 11 [93 Pac. 402].)

■ Whether the appellant's possession or user was adverse was a question of fact for the trial court. (*Franz* v. *Mendonca,* 131 Cal. 205 [63 Pac. 361]; *Pinheiro* v. *Bettencourt,* 17 Cal. App. 111 [118 Pac. 941]; *Alper* v. *Tormey, supra.*) The question is not whether the evidence would have supported a decision in favor of the appellant, but whether the decision made finds support in the evidence.

■ The conversation with Teague as narrated by appellant does not demand the interpretation of a parol grant. It is also fairly susceptible of being interpreted as a license or permission given as a matter of accommodation or as a description of a custom. The plaintiff's complaint was not put in evidence, and we will not refer to it as evidence, but it may be mentioned to illustrate the point that plaintiff's report of his conversation with Teague is fairly susceptible of being understood otherwise than as a parol grant. The wording of the complaint shows it was understood otherwise by those drafting and verifying the complaint. The only statement of plaintiff's claim of easement found in his complaint is in paragraph IV. It is, ''That from the year 1907 until the year 1925 by mutual agreement between the plaintiff and defendant . . . there was maintained in common a turn row . . . (describing it and its use).'' ■ A prescriptive title cannot arise out of an agreement; it must

be acquired adversely; it cannot be adverse when it rests upon a license or mere neighborly accommodation. (*Pinheiro* v. *Bettencourt,* 17 Cal. App. 111, and cases cited at p. 119 [118 Pac. 941, 945].)

Likewise the conversation with Sprague does not demand the interpretation of notice of adverse user under claim of right. The user itself was not of such a character as to compel the conclusion that it was hostile to the rights of the defendant and his predecessors. The use of a turn row partakes so much of the nature of a custom as generally to excite no suspicion that it is hostile to the neighboring land owner. The presumption of ownership is with the paper title. Clear evidence is necessary to overcome this presumption. The adverse claim of right must not only exist in the mind of the claimant but must be proven to have been communicated in some way to the owner so that his failure to object may be taken against him as an acknowledgment of or acquiescence in the right claimed. (*Clarke* v. *Clarke,* 133 Cal. 667 [66 Pac. 10]; *Tarpey* v. *Veith,* 22 Cal. App. 289 [134 Pac. 367]; *Heenan* v. *Bevans,* 51 Cal. App. 277 [196 Pac. 802].)

The judgment appealed from is therefore affirmed.

Sturtevant, J., and Nourse, J., concurred.