[Civ. No. 6694.   Third Dist.   Dec. 28, 1942.]

JAMES D. CRAIN et al., Respondents, v. JOHN HOEFLING et al., Appellants.

J. F. Good and Chas. L. Gilmore for Appellants.

Hubert I. Townsend for Respondents.

ADAMS, P. J.—Appeal from a judgment of the Superior Court of Butte County. On February 11, 1885, Big Bend Tunnel and Mining Company owned the S.E. ¼ of Section 1, T. 21 N., R. 4 E., M.D.B. & M. in Butte County, California, hereinafter referred to as Parcel 2. David W. Hall owned the S.W. ¼ of Section 6, T. 21 N., R. 5 E., M.D.B. & M., hereinafter referred to as Parcel 1. Said parcels adjoin. The Tunnel Company on said date entered into an agreement with Hall by which it remised, released and forever quit-claimed unto Hall and his brother, their heirs and assigns "the sole right and privilege to use and occupy the surface of" said Parcel 2 "but reserving and excepting therefrom any and all tunnel, mineral, timber and water rights of whatever kind and nature, in and upon said land; also the right and privilege to build and maintain upon, over and across said land any road or roads now constructed or which may hereafter be found necessary for the best interests and working of the property of the party of the first part, with the right of egress and ingress to the same; also the right and

privilege to enter upon said land to build and maintain on it, such mining works, with sufficient land around the same for the convenient use and working of the same and for the disposal of waste material as the party of the first part may elect to erect upon said land, the space so used not to exceed Eight (8) acres, in any one place; also reserving therefrom the lot of land now used and occupied by said party of the first part, as a saw-mill site, log-yard, lumber yard and boarding house site; if the said party of the first part shall find it necessary to remove its saw-mill from its present location to another location upon said part of said Section One (1) in order to cut its timber on the balance of said Section One (1), the said party of the first part shall have the right to remove it to such other location as they may decide upon and this agreement shall run to and apply to such new location. It being the mutual intention and understanding of all parties hereto, to convey only *the agricultural and grazing rights* to said land.'' By the same instrument Hall remised, released and forever quit-claimed to the Tunnel Company [omitting the words ''heirs and assigns''] ''the sole right and privilege to cut, fall and remove from'' Parcel 1 ''all the pine and spruce timber upon said land, with the right and privilege to build such log roads as may be found necessary to haul out the timber; said roads to be maintained and used for such time only as may be requisite to haul out said logs.'' The party of the first part also agreed to deliver to said parties of the second part, at its saw-mill free of cost, twenty thousand feet, board measure, of lumber; such lumber to be of such size and length as parties of the second part might elect, provided that the same could be sawed by the mill then in use by the party of the first part.

The Hoeflings are the successors in interest to the Tunnel Company and Crain is successor to the Halls. The rights of the respective parties are such as flow from the aforesaid agreement of February 11, 1885, except as same may have been lost or modified by lapse of time or otherwise.

In the present action Crain claims to be the owner of Parcel 1, the right to possession and enjoyment of the surface of Parcel 2, ''all water rights, including natural springs from which water is flowing and situate upon'' Parcel 2, and ''all timber rights and timber growing and located upon'' Parcels 1 and 2 ''including standing timber and felled timber.'' The Hoeflings claim to own Parcel 2, subject to the

rights of plaintiffs to use said land for agricultural purposes only. They also assert that, subject only to certain rights of the Pacific Gas and Electric Company, they own in fee "all of the timber standing and growing upon" Parcel 1, together with "the sole right and estate to cut and remove all such timber."

The claims of the respective parties were set up by complaint, cross-complaint and answers, and after trial of the issues by the court findings were made as follows.

That Crain is the owner of Parcel 1 "together with all timber and trees growing upon, or severed and situated upon, said real property"; also that he is "the owner and entitled to the possession of the surface rights" of Parcel 2 "together with all timber and trees growing upon, or severed and situated upon" said parcel, "and *the right to the use of water emanating from said real property, and particularly the water of Maple Springs thereon, for watering cattle, horses, pigs, sheep and other livestock that may be taken upon said land in connection with the use of the said agricultural rights of said plaintiff* James D. Crain. That said plaintiff has claimed and used said water for said purpose openly, notoriously and continuously for a period of more than five years prior to the commencement of this action and has paid all taxes of every kind which have been levied or assessed thereon. That said surface rights consist solely of the right to use the surface of said land for agricultural purposes and such rights in connection therewith as are common and are a reasonably necessary part of enjoying agricultural rights thereon. That the right of said plaintiff to the possession of said surface of said land is subject to rights hereinafter found to belong to the defendants." (Emphasis ours.)

The Hoeflings were found to be "the owners of all water rights of whatever kind and nature situate upon or emanating from" Parcel 2 "exclusive of the water which the plaintiff James D. Crain has the right to use as hereinabove found; and that the said defendants have the right to use the said water without confinement to the use thereof in any manner." The Hoeflings were also found to own all tunnel and mineral rights in Parcel 2 and a reasonable right of ingress and egress upon said lands to make use of said water rights, mining rights, tunnel rights, etc. The rights of Crain were found to be subject to certain rights in plaintiffs Allingham and Sobrero, and the rights of the Hoeflings to be subject

to certain rights of the Pacific Gas and Electric Company, not of importance on this appeal.

Judgment followed quieting the title of the respective parties to the rights as found. Both parties filed notice of appeal. By stipulation the record on appeal was limited, and it was agreed that the appeals should be considered as cross appeals and that but one transcript should be prepared. It was also stipulated that, except as to any rights acquired or lost under the law and evidence of the case, plaintiff Crain (subject to the rights of Allingham and Sobrero), through mesne conveyances omitted from the transcript, owns all of the rights and interests of the Halls or either of them as disclosed in the agreement of February 11, 1885, and that through mesne conveyances, also omitted, all of the rights and interests of the Tunnel Company as disclosed in said agreement are vested in Pacific Gas and Electric Company subject to defendants' equity under an agreement of sale dated December 8, 1937.

However, no brief was filed by counsel for plaintiffs and cross-appellants Crain, et al., and on motion their appeal was dismissed. The case is before us on the opening brief of the Hoeflings, defendants, appellants and cross-respondent.

The first contention of appellants is that the finding of the trial court as to the water rights of Crain in Parcel 2 is in conflict with the terms of the aforementioned agreement of 1885, that the finding that Crain acquired a right to the use of the water on said parcel by prescription is unsupported by the evidence, and also is invalid in that it is too indefinite in its terms since it fails to define the amount of water to which plaintiff is entitled or the time or times during the year when he has a right to use it. These contentions appear to be well founded.

The conveyance of 1885 clearly reserved in the Tunnel Company, plaintiffs' predecessor in interest, "any and all tunnel, mineral, timber and water rights of whatever kind and nature, in and upon said land." It conveyed only the "right and privilege to use and occupy the surface" of said parcel, subject to the reservation; and the mutual intention and understanding of the parties was that the grantee should take "only the agricultural and grazing rights to said land." Plainly it was not intended that such rights should include the use of any of the water. Such being the case, any rights which plaintiffs have in the water must have been acquired,

402

if at all, by adverse user in the manner and for the time provided by law; and the burden was upon plaintiffs to prove such prescriptive right (25 Cal.Jur., p. 1154; *Haight* v. *Costanich,* 184 Cal. 426, 435 [194 P. 26]; *Barlow* v. *Frink,* 171 Cal. 165, 170 [152 P. 290]) by the clearest and most satisfactory proof (*Pyramid Land, etc., Co.* v. *Scott,* 51 Cal.App. 634, 646 [197 P. 398]), and to establish all of the elements essential to such title. (*Clarke* v. *Clarke,* 133 Cal. 667, 669 [66 P. 10]; *Pyramid Land etc. Co.* v. *Scott, supra; Barlow* v. *Frink, supra.*) ██ These elements are actual, open and notorious use, hostile and adverse to the original owner's title, continuous and uninterrupted for the statutory period under claim of right. (25 Cal.Jur. 1157-8.)

██ To support a plea of user there must be a finding that some definite quantity was diverted or used. (25 Cal.Jur. 1159; *Watson* v. *Lawson,* 166 Cal. 235, 243 [135 P. 961]; *Hayes* v. *Silver Creek etc. Co.,* 136 Cal. 238, 240 [68 P. 704].) There must be a finding as to the quantity of water to which the right attaches, and the absence of such a finding is fatal to the judgment. (*San Bernardino* v. *Riverside,* 186 Cal. 7, 23 [198 P. 784].) And the absence of a finding as to the amount which is reasonably necessary has been held to be fatal to a judgment establishing a prescriptive right. (*California Pastoral etc. Co.* v. *Madera Canal etc. Co.,* 167 Cal. 78, 89, 90 [138 P. 718].) Also one who claims to have acquired a right to the prejudice of another must show that the acts upon which he bases his claim were known to such other (25 Cal. Jur. 1165; *Pabst* v. *Finmand,* 190 Cal. 124, 128 [211 P. 11]), unless such user was so open and notorious and of such a nature as to impute such knowledge. Of course, such use must have been adverse to the rights of the owner (*Turner* v. *East Side Canal & Irr. Co.,* 169 Cal. 652, 655 [147 P. 579]; 25 Cal. Jur. 1169), and not permissive. A use is presumptively permissive in the absence of proof to the contrary; and a finding not showing adverse user against the owner is fatally defective. (*Churchill* v. *Louie,* 135 Cal. 608, 610, 611 [67 P. 1052].)

██ A perusal of the record herein reveals that plaintiffs' efforts to show adverse use of the water upon Parcel 2 were directed mainly to the use of the water of Maple Springs (the principal source of water on the parcel) for irrigation of a walnut grove planted by Crain; and most of the testimony

adduced by him was upon this subject. The trial court, however, was of the opinion that the right acquired was ''for watering stock and not for irrigation.''

The only testimony regarding use of the water for watering stock was that of plaintiff Crain and his father. The former testified that in 1920 he and his father ran sheep on both parcels and that said sheep watered at Maple Springs or from the flow down the ravine; that they kept sheep on the property until 1926; that they also had hogs and horses; that plaintiffs' immediate predecessor prior to 1920 had around 40 head of cattle on the property and she claimed 300 head of hogs, but that he did not know how long she had been running such stock on the place; that since 1926 or 1927 plaintiff had not run any stock on the property personally but had rented the place for that purpose and that stock watered along the canyon below Maple Springs. However, he also testified that Maple Springs had been used for a summer camp and headquarters, and that in 1925 he had planted a walnut grove on the property, to irrigate which he had diverted the water from Maple Springs into a ditch and used all of it for such purpose. Furthermore, he testified that for 7 months in 1925 and 1926 he had sold water from the Spring to operators of the Surcease Mine, and that previous to that time the mine had used the water during the winter period; that he paid taxes only on the surface rights, and that his tax bills said nothing about tunnel, mineral, timber or water rights. Some use of the water for domestic purposes was also shown. Neither Crain nor his father, who were the only witnesses for plaintiffs, gave any testimony whatsoever as to how many head of livestock were on the premises after 1926 nor for what part of any year they consumed the waters. There was no evidence whatsoever as to the amount consumed nor any approximation thereof, nor is there any evidence in the record that their use of the waters was not permissive or was without the consent of the owners of the water right reserved, or that it was known to them.

Witnesses for the defendants, some of whom lived on the place after 1926, testified to some diversion of the waters of Maple Springs for irrigation of the walnut grove and to some use of it for domestic purposes and for watering small gardens. Only one of them gave any testimony regarding livestock on the land and that was that one Allen had cattle there

in 1935 and 1936. Witness Moak testified that in 1933 there was no use of the waters on the premises. The record is entirely bare of any testimony that any certain number of horses, cattle, sheep or hogs were pastured upon or watered from the waters on Parcel No. 2 for any continuous five-year period except as to sheep from 1920 to 1925 or to 1926. There was not even an approximation of how much water was used or is reasonably necessary for the use of livestock on the land. There was no diversion of water into troughs or ditches for watering stock, and no enclosure of Maple Springs until 1937. There was never any affirmative action taken by plaintiff indicating that his user was hostile or adverse to the rights of defendants or their predecessors, or that his adverse claim was ever communicated to them. (*Eddy* v. *Demichelis,* 100 Cal.App. 517, 520 [280 P. 389].) Nor has plaintiff brought himself within the rule laid down in *Crane* v. *J. J. Stevinson, Inc.,* 5 Cal.2d 387 [54 P.2d 1100], as to the quantity of water claimed and devoted to a beneficial use. The finding that plaintiffs have acquired the right to the use of the waters on Parcel No. 2, by adverse user, is in our opinion without support in the evidence ▉ and the finding as to the amount to which they are entitled is too indefinite and uncertain to support a judgment.

The second contention of appellants is that the trial court erred in its findings regarding the timber rights of the parties. It is stipulated that they depend upon the agreement of February 11, 1885. Under that agreement "all tunnel, mining, timber and water rights of whatever kind and nature in and upon" Parcel No. 2 were excepted and reserved; only the "agricultural and grazing rights" were conveyed. As to Parcel 1 the agreement conveyed to the Tunnel Company (but not its heirs and assigns), the right to "cut, fall and remove" from said parcel "all the pine and spruce timber upon said land", with the right to build such roads as were found necessary "to haul out the timber; said roads to be maintained and used for such time only as may be required to haul out said logs."

The trial court found that plaintiffs own "all the timber and trees growing upon or severed and situated upon" both parcels, its memorandum of opinion indicating that it construed the agreement as referring only to the timber then ready for cutting standing upon the properties at the time

the agreement was made; and that the evidence showed that the Tunnel Company had logged the land and exhausted its timber rights on both parcels.

As to the timber rights in Parcel 1 the agreement is susceptible of such construction. It specified the "pine and spruce timber *upon* said land," and gave the right to maintain and use roads for such time only as might be requisite to haul out said logs. Also, it provided that the Tunnel Company should deliver a specified quantity of lumber to the Halls free of cost, delivery to be made at the said mill of said company. There is some evidence that the lands had once been logged over, and it is a reasonable construction of this portion of the agreement to conclude that it pertained only to the pine and spruce timber then upon said land, and did not give a right to timber which might thereafter grow upon said land.

The word "timber" unless modified or controlled by other expressions in an agreement means, as a rule, such trees as are fit to be used for lumber in building or similar construction. (*Holly Hill Lumber Co.* v. *Grooms,* 198 S.C. 118 [16 S.E.2d 816]; *Cooley* v. *Meridian Lumber Co.,* 195 La. 631 [197 So. 255]; *Overby* v. *Burnham,* 190 Miss. 435 [200 So. 591]; *Nabors* v. *Weaver Bros. Lumber Co.,* 197 La. 81 [200 So. 827].) Defendants made no effort to show that any pine or spruce timber which might have been growing upon the land in 1885 was still standing or that the right to such timber had not been exercised. Had they done so, a right to such timber might be upheld, in the absence of any time limit for its removal. (*Ciapusci* v. *Clark,* 12 Cal.App. 44 [106 P. 436]; *Peterson* v. *Gibbs,* 147 Cal. 1 [81 P. 121, 109 Am.St.Rep. 107]; *Anderson* v. *Palladine,* 39 Cal.App. 256 [178 P. 553].) There was evidence that the trees remaining were second or third growth.

But as to Parcel No. 2, what was granted was the "right to use and occupy the surface"; but there was reserved and excepted therefrom any and all tunnel, mineral, timber and water *rights* of whatever kind and nature, in and upon said lands; and a different situation exists. A reservation in a grant is construed most strongly in favor of the grantor. (Civ. Code, § 1069.) The trial court has recognized the reservation in so far as the tunnel, mineral and water rights are concerned, but has nullified it as to the timber rights. There is nothing in the language of the agreement justifying

such distinction, or indicating that the reservation was only of the timber then usable or marketable, or that the removal of marketable timber would terminate or exhaust the right reserved. What was excepted from the grant was the timber "rights," not the timber alone; and such rights were a part and parcel of the real property never conveyed by the grantor. (*Sears* v. *Ackerman,* 138 Cal. 583, 586 [72 P. 171].) The right conveyed was the right to "use and occupy the surface of the parcel"—the "agricultural and grazing rights," to which the timber rights cannot be said to be an incident or in any way essential. There is nothing indicating in any way that the timber was to be removed within any specified time or at all. The grantor continued to be the owner of the parcel, subject only to the right of the grantee to occupy the surface thereof; and the timber and other rights reserved continued to be a part of the real property reserved in the grantor and excepted from the grant which never passed to plaintiff.

The judgment of the trial court insofar as it adjudges plaintiff Crain to be the owner of the timber and trees growing upon Parcel 2, and of the right to the use of water emanating from said parcel, is reversed.

Schottky, J. pro tem., and Thompson, J., concurred.

A petition for a rehearing was denied January 27, 1943.