## Wallace et al. v. Neal.

(Decided December 14, 1928.)

HUGH RIDDELL and CLARENCE MILLER for appellants.

ROBERT R. FRIEND for appellees.

OPINION OF THE COURT BY COMMISSIONER TINSLEY— Affirming.

The appellants, plaintiffs below, claim that the appellants James A. Wallace, W. P. Williams, G. B. Williams, and Mrs. W. S. Raydure are the owners in fee of a tract of 40.48 acres of land on Cow creek in Estill county, Ky.; that the appellants Reno Oil Company, Thomas Adams and G. H. Brenner are the owners of the

oil and gas therein, less a royalty of one-eighth thereof belonging to the owners of the fee; that the defendant below, Wood Oil Company, is claiming the oil and gas in a portion of said 40.48 acres under some sort of a lease executed to it by the defendant Neal, and has entered thereon without right and against their will and without their consent, and has drilled one or more producing oil wells, and are marketing the oil from said wells to their damage in the sum of $1,000, for which they pray judgment.

In his answer the defendant Neal, after traversing the allegations of the petition, alleges that he is the owner and in the possession of a described tract of land containing 15 acres, which he says is a part of a larger boundary owned by him and in his possession; that said described tract of 15 acres is embraced within the lines of the tract described in the petition, and denies that the plaintiffs or any or either of them are the owners of the land described in the petition or any part thereof, or any interest therein, so far as the same includes, or attempts to include, the boundary described in said answer. In the second paragraph he alleges that he and those under whom he claims are, and have been, for more than 15 years, and for more than 30 years, in adverse possession of the land described in the first paragraph of his answer. In the third paragraph he alleges that on June 4, 1914, he and his wife executed to the plaintiff G. B. Williams a lease of the land described in his answer, for oil and gas purposes, and that, by subsequent assignment, said lease became vested in his codefendant, Wood Oil Company, and that, by reason of said lease, said G. B. Williams was estopped from asserting any title to said land or any interest therein.

By reply, the affirmative allegations of the answer were traversed and the issues made up.

On February 14, 1927, an agreed judgment was entered, wherein it is recited that the Wood Oil Company had acquired all the interests of the Reno Oil Company, Thomas Adams, and G. H. Brenner, in said land and lease, and had settled all matters at issue as between themselves, leaving only to be determined the question of ownership of the fee in the 15 acres of land in controversy and the royalty interest therein.

On the trial, appellants introduced what purports and what appears to be a complete chain of title from the

commonwealth down to themselves for the land in controversy, and made a prima facie case. However, appellees attacked their title, suggesting that the survey made by Conley under order of the court in the case of McKinney v. McKinney Heirs, and the deed from McKinney heirs by commissioner to Maple, appellants' remote vendor, pursuant to that survey do not embrace the land in controversy.

Appellee introduced his chain of title and evidence to show his possession, extent of possession, and the length of time such possession had continued. At the conclusion of appellants' evidence, appellee moved the court to peremptorily instruct the jury to find for him, which motion the court overruled, and, at the conclusion of all the evidence, the appellee renewed his motion for a peremptory instruction, and it was sustained; thereupon the court peremptorily instructed the jury to find and return a verdict for the appellee, on the ground that, at the time the appellants took the deeds under which they claim, the appellee was in the actual adverse possession of the land in controversy, and therefore appellants' deeds are and were champertous.

On this appeal, appellants insist, first, that a lease for oil and gas creates a separate estate from the surface, and that adverse possession does not run against the owners of mineral, including oil and gas, by a claimant in possession. Where there has been a severance of the mineral from the surface of a tract of land by a conveyance of the one, or by a conveyance of the one and the reservation of the other, possession of the surface is amicable to the holder of the mineral estate, and does not become adverse, no matter how long continued, until some overt act upon the part of the surface holder to reduce the minerals to his possession.

But whether the execution of an oil and gas lease which, in the first instance, is merely the grant of the right of exploration and which may, by its own terms, be defeated by acts of the lessee, or the lapse of time, is sufficient to sever, and, is a severance of the estates in the land, is not necessary in this case to be determined; since, if appellee's adverse possession of the land in controversy, which the lower court found existed at the time appellants took their deeds, had its inception prior to the execution of the lease from Maples to Dulan in 1913, and which is the severance claimed and relied on by appel-

lants, then no severance of the estates, however or by whom made or attempted, could affect appellee's possession and title when continued to maturity; and no such severance could estop, suspend, or toll the statute of limitation in his favor after it had begun to run.

■ It is next insisted that the statute against champerty does not apply so as to void a deed by reason of adverse possession, where a contract of sale was entered into prior to such adverse holding. While the rule is, that a deed is not champertous if made pursuant to a contract to convey, entered into before possession was taken by the adverse claimant, even though the deed be executed subsequent to entry by the adverse claimant, that rule contemplates a contract that is enforceable, a written contract; and, obviously, the party relying on such prior contract to defeat the plea of a champertous deed raised by his adversary has the burden of showing such prior contract, or satisfactorily accounting for its loss or absence, if unable to produce it. In avoidance of the plea of champerty raised by appellee by his motion for a peremptory instruction at the conclusion of all the evidence, and when the court had, as is shown by the bill of evidence, indicated his intention of sustaining that motion, appellants were permitted to recall G. B. Williams in the attempt to show a prior contract for the purchase of the lands claimed by appellants. The witness was asked when he bought the land, and answered: "I think it was either 1912 or 1913;" and he was then asked if he had any bond or anything of that sort at the time (meaning, of course, if he took any title bond or any written contract of sale and purchase); he answered: "I don't know that I had any bond;" and, when asked on cross-examination, if he received any paper at the time he bought, he answered: "I don't know; I wouldn't say positive." Since appellants do not know, and this witness was unable to say, that he took any title bond, or any written memorandum of purchase, at the time he claims to have purchased his interest in the land claimed by appellants herein, we must conclude there was no such paper; or, if there was any prior purchase, it was in parol only. However, all this assumes there was no adverse possession of the land in controversy by the appellee prior to 1912 or 1913; and this brings us to the consideration of that question.

■ The evidence of appellee shows clearly: That his vendor, Dud Farthing, acquired 50 acres of land, adjoin-

ing the 15 acres in controversy, from Joe Farthing in 1895, and in that year took actual possession of said 50 acres, and immediately thereafter extended his possession over, and took into his boundary, the 15 acres in controversy, by building a brush fence along the line of the 15 acres next to and within the land of appellants. That he, from that time on, claimed the 15 acres and exercised control over it, and was in possession of it when he, in 1897, sold to appellee. Appellee took possession of the 15 acres under his purchase from Dud Farthing in 1897. Farthing sold him up to the brush fence. Appellee partly cleared the 15 acres, and sold the merchantable timber therefrom, extended his fields therein, and raised crops thereon from time to time, pastured his cattle thereon, and exercised such acts of ownership and control over it as he did over the 50 acres admittedly belonging to him adjoining it. That he maintained this brush fence from 1897 to 1915, when it was replaced by a wire fence along the same line. This brush fence was from four to six feet high, sufficient at all times to turn live stock, and was connected at either end with fences which inclosed the remaining land claimed by him.

It has long been the rule in this state that one in possession, claiming to a well-marked or a well-defined boundary, holding and maintaining such possession continuously and adversely for 15 years or longer, acquires title to the land so defined, possessed, and held. Keaton v. Sublett, 109 Ky. 106, 58 S. W. 528, 22 Ky. Law Rep. 631; Whitley County Land Co. v. Powers' Heirs, 146 Ky. 801, 144 S. W. 2.

Can there be any doubt, if a well-marked line defining the extent of possession claimed and the continuous and adverse holding to such a line will mature title in the possessor, that a brush fence four to six feet high, connected at either end with other fences, and so maintained for 20 years, is not sufficient notice of one's claim and extent of his possession We think not. Such a fence, as shown by the evidence in this case, is just as sufficient for all practical purposes, as a rail or worm fence. It is far more noticeable than a marked line, and is more likely to attract attention. The necessity of a fence, or the marking of a line by one claiming and holding adversely and without recorded paper title, is to give notice of the claim and extent of possession. The marked

line must be searched out; the brush fence can be seen by the most casual observation.

We therefore conclude that the appellee was in the actual adverse possession of the land in controversy long prior to the time of the execution of the deeds to appellants and prior to the making of the contract of purchase by appellant, G. B. Williams, regardless of whether that contract was in writing or parol.

The judgment of the court below being in accord with our conclusions, it is ordered to be, and is, affirmed.