**BROUGHTON et al. v. HUMBLE OIL & REFINING CO. et al.**

No. 3499.

Court of Civil Appeals of Texas. El Paso.

April 29, 1937.

Rehearing Denied May 20, 1937.

Dan Moody and Greenwood, Moody & Robertson, all of Austin, Weaver Moore, Moore & Moore, Cecil N. Cook, and Kayser, Liddell, Benbow & Butler, all of Houston, and Theobald & Johnston, of Galveston, for appellants Herbert Broughton, Lillian Broughton, and F. L. Luckel.

Ballinger Mills, of Galveston, for appellant Madie E. Hanscom.

R. E. Seagler, Rex G. Baker, and Felix A. Raymer, all of Houston, for appellees W. W. Barnes and Humble Oil & Refining Co.

NEALON, Chief Justice.

This was an action in trespass to try title brought by Herbert Broughton and wife, Lillian Broughton, as plaintiffs, against Madie E. Hanscom, a feme sole, W. W. Barnes, and Humble Oil & Refining Company, as defendants. Plaintiffs sued for the recovery of title and possession of a fifteen-acre tract of land in Galveston county, Tex. The defendant Madie E. Hanscom was the record owner in 1924 when plaintiffs Her-

bert Broughton and wife, Lillian Broughton, asserted they fenced the land and began to mature a limitation title. In 1930, Madie Hanscom executed an oil, gas, and mineral lease to the defendant W. W. Barnes, Madie E. Hanscom retaining the usual ⅛ royalty. In 1930, W. W. Barnes assigned this mineral lease to defendant Humble Oil & Refining Company, retaining an overriding royalty of ⅟₄₈.

Herbert Broughton and wife executed an oil and gas lease to the intervener, F. L. Luckel.

No operations for drilling were commenced by the defendant Humble Oil & Refining Company until after the institution of this suit.

The court submitted two special issues, which were as follows:

"Special Issue No. 1. Do you find from a preponderance of the evidence that the plaintiff, Herbert Broughton, had been in peaceable, adverse, and continuous possession of the land in controversy, using the same as a pasture for grazing purposes for any period of ten consecutive years or more prior to the 16th day of December, 1934?"

"Special Issue No. 2. Do you find from a preponderance of the evidence that, at the time the defendant Humble Oil and Refining Company drilled the well and undertook to develop the land described in plaintiffs' petition, its officers and agents honestly and in good faith believed, on all the information before them, that said company had good title to the mineral leasehold estate and had the right to develop it?"

The jury answered special issue No. 1, "Yes," and special issue No. 2, "No."

The court entered a judgment for the defendants for the minerals, notwithstanding the verdict, holding that the execution of the lease by Madie E. Hanscom to W. W. Barnes, after Broughton and wife had entered upon and taken possession of the land, but before the expiration of the full ten-year period, interrupted the adverse possession of the plaintiffs in so far as the minerals were concerned.

The judgment recited that the court was of the opinion: "That the evidence adduced upon the trial of this case is sufficient to sustain the findings of the jury in the answers to the special issues submitted in the charge, but, notwithstanding such findings of the jury, the court is of the opinion that as a matter of law Herbert Broughton and wife plaintiffs herein, did not acquire a limitation title to the oil, gas and minerals in the land in controversy because it appeared from the lease introduced in evidence that after the said Broughton entered upon said land as found by the jury, and before his title by limitation matured in him, said lease was executed and delivered and the mineral estate in said land was thereby severed from the surface estate therein, so that as a matter of law the adverse occupancy by plaintiffs of said land could not and did not mature in them a limitation title to the minerals in the land, and, therefore, that defendants' motion for judgment non obstante veredicto should be sustained."

The parties will be referred to in this opinion as they were related to the litigation in the trial court; that is, appellants Herbert Broughton and Lillian Broughton will be referred to as plaintiffs, appellant F. L. Luckel will be referred to as intervener, and appellees Madie E. Hanscom, W. W. Barnes, and Humble Oil & Refining Company will be referred to as defendants.

Plaintiffs and intervener, and Mrs. Madie E. Hanscom appealed.

### Opinion.

We shall first consider the action of the trial court in rendering judgment for defendants non obstante veredicto as to the mineral estate in the lands in controversy, though holding that the evidence was sufficient to support the findings of the jury. This action of the court was erroneous. At the time plaintiffs made their adverse entry upon the land there had been no severance of the mineral estate; therefore, plaintiffs' adverse entry upon the surface extended downward and drew to it title to the underlying minerals. Article 5513, Revised Statutes, 1925, provides that: "Whenever an action for the recovery of real estate is barred by any provision of this title, the person having such peaceable and adverse possession shall be held to have full title, precluding all claims." It is not claimed, nor could it be, that the execution and delivery of the lease to Barnes and the subsequent lease to the oil company ousted plaintiffs. Both court and jury found that their peaceable and adverse possession continued thereafter until the full period of ten years was completed. This possession was not interrupted by adverse suit to recover the estate. Therefore, it was not interrupted at all. R.S. art. 5514; Cobb v. Robertson, 99 Tex. 138, 86 S.W. 746, 87 S.

W. 1148, 122 Am.St.Rep. 609; Bullock v. Smith, 72 Tex. 545, 10 S.W. 687.

Defendants contend that the delivery and record of the oil and gas lease placed upon plaintiffs a further duty with respect to their use of the land, and that plaintiffs failed "to exercise that degree of hostile, adverse and exclusive dominion over the severed mineral estate, which was required by operation of law, to continue in motion the limitation statute, so as to effectively mature title in him (Broughton) to the severed estate." We can find no basis in reason or authority for such a proposition. The execution and delivery of the lease of themselves did not affect plaintiffs' position, since only ouster or suit could interrupt the running of the statute in their behalf. Mrs. Hanscom did not have either actual or constructive possession of the property at the time she executed the lease. She was unable, therefore, to deliver either character of possession to her lessee. So far as the evidence reveals, she was never in actual possession of the land. Her constructive possession, by reason of being the owner of record title, ceased when plaintiff took possession under a claim adverse to hers.

Our attention has been called to no case in Texas, in which there was a decision of the exact question presented. Nor have we been able to find one. Inferentially the view we take is expressed in Clements v. Texas Co. et al. (Tex.Civ.App.) 273 S.W. 993, at page 1005: The question there presented was whether a conveyance of the mineral rights by one in possession who had not yet matured a title, arrested the running of the statute. Holding that no such effect was produced, the court said: "But a severance by one in possession, who has not yet matured a title, does not abandon, limit, or qualify his possession for the purpose of ripening a title against the true owner out of possession; and that, as against such disseized owner, the continued possession of a trespasser after severance, as before, is adverse, and that such possession continued by either the trespasser or the third person to whom he severs will mature a title by limitation to the entire tract as against such disseized owner. ; Black Warrior Co. v. West, 170 Ala. 346, 54 So. [200] 201; Moore v. Empire Co., 181 Ala. 344, 61 So. 940; Moore v. Ensign-Oscamp Co., 131 Ga. 421, 62 S.E. 229; Virginia Coal Co. v. Richmond, 128 Va. 258, 104 S.E. 805; Virginia Coal Co. v. Hylton, 115 Va. 418, 79 S.E. 337, Ann.Cas.1915A, 741; Gathright Land Co. v. Begley, 200 Ky. 808, 255 S.W. 837."

If the quotation is a correct exposition of the law, its logic inevitably demands the holding we make.

The same opinion distinguishes the line of cases holding that when the adverse entry is made after the severance, something more than use of the surface is required. Such dominion must be exercised over the minerals as will be notice to the owner of the mineral estate that the possessor of the surface is claiming the minerals also. Defendants had such notice in this case, for plaintiffs were in possession of all the land—surface and subsoil.

Our view finds ample support in other jurisdictions. The editors of American Jurisprudence, volume 1, p. 857, § 117, state the rule as follows: "Prior to a severance, mineral lands form no exception to the general rule that the title of the owner of real property includes, not the surface thereof alone, but also that which lies beneath and above the surface. Therefore, an adverse possession of the surface of mineral lands before severance may ripen into title to the minerals as well as to the land. Where such an adverse possession commences before severance has taken place, its continuity is not broken by the fact that the owner of the legal title subsequently executes a formal conveyance of the minerals to a stranger; nor will the fact that such conveyance was duly recorded affect the adverse claimant, where no actual possession was taken in pursuance thereof."

In support of this text the following cases are cited: Red River Lumber Co. v. Null, 66 Cal.App. 499, 226 P. 812; Kinder v. La Salle County Carbon Coal Co., 301 Ill. 362, 133 N.E. 772; McPherson v. Thompson, 203 Ky. 35, 261 S.W. 853; Delaware & H. Canal Co. v. Hughes, 183 Pa. 66, 38 A. 568, 38 L. R.A. 826, 63 Am.St.Rep. 743; Kiser v. McLean, 67 W.Va. 294, 67 S.E. 725, 140 Am. St.Rep. 948; J. R. Crowe Coal & Min. Co. v. Atkinson, 85 Kan. 357, 116 P. 499, Ann. Cas.1912D, 1196; Wallace v. Elm Grove Coal Co., 58 W.Va. 449, 52 S.E. 485, 6 Ann. Cas. 140.

In 13 A.L.R., p. 372, the view is expressed: "The general rule is that if there is no severance of mineral rights from the surface, an adverse entry upon the surface extends downward and draws to it a title to the underlying minerals." Delaware & H. Canal Co. v. Hughes, 183 Pa. 66, 38 A. 568, 38 L. R.A. 826, 63 Am.St.Rep. 743.

See, also, 1 R.C.L., 738; 2 Corpus Juris, p. 115; Finnegan v. Stineman, 5 Pa.Super.

124; Morse v. Shackelford (C.C.A.) 9 F. (2d) 907; Gill v. Colton (C.C.A.) 12 F. (2d) 531; Wallace et al. v. Neal et al., 227 Ky. 30, 11 S.W.(2d) 1002.

Defendants attempt to distinguish Wallace v. Neal, supra, because of the contention therein made that the assignment of the mineral rights violated the Kentucky champerty statute, which declared void deeds to land in the possession of adverse claimants. The argument condemns defendants' theory, since, as a necessary condition, it presupposes adverse possession of the mineral estate to result from occupation, possession, and use of the surface before severance.

Defendants insist, however, even though the reason given by the trial court be not a correct one, yet the judgment was correct, because the evidence as to the inclosure of the land, and its hostile and exclusive use for the full period of ten years, was insufficient as a matter of law to give the notice contemplated by the ten years' statute of limitation (Vernon's Ann.Civ.St. art. 5510). With this contention we are unable to agree. The fact that the fence on the east side went down before the ten-year period terminated, when taken in connection with the undisputed evidence that at the time it went down Broughton secured for pasturage use the Shelor tract immediately east of the tract in controversy, that his stock then ranged on both tracts, that the Shelor tract was completely fenced except along the bayou on the southerly boundary, and that the bayou constituted a natural barrier against the passage of cattle, is not sufficient to warrant taking the case from the jury. It was not shown that any cattle other than plaintiff's were grazed upon the Shelor tract during this period. Plaintiff testified that none but his own ever grazed upon the Hanscom tract. Parker v. Newberry, 83 Tex. 428, 18 S.W. 815.

What is said here is applicable to appellant Madie E. Hanscom's motion to instruct verdict in her favor. Her assignment complaining of the trial court's refusal to so instruct is overruled.

Plaintiffs' original petition was filed April 2, 1935. It was in the usual form of petition in a suit in trespass to try title—alleging ownership, dispossession, and damages. Defendant Madie E. Hanscom, a feme sole, was cited by publication; the issuance and service of citation being regular in all respects. The suit was returnable June 4, 1935. On that day the law firm of Terry, Cavin & Mills, of Galveston, filed an answer for Madie E. Hanscom. The next day the court appointed Mr. Ballinger Mills, a member of said firm, to represent the absent defendant Madie E. Hanscom. The court's order recites that Mr. Mills made it known to the court and all interested counsel that approximately ten years before Mrs. Hanscom had "verbally appointed and empowered one John W. Hopkins, a reputable citizen of Galveston County, Texas, and an official of the Security Trust Company of said city, to manage and look after her estate in Galveston County, consisting of several pieces of land and other properties * * * that the said John W. Hopkins is a client of the law firm of Terry, Cavin & Mills, and a personal friend of said Ballinger Mills * * * that upon learning of the filing of this suit the said Hopkins wrote Mrs. Hanscom of said fact and advised her of the necessity of employing counsel, but has received no reply; that it was the opinion of the said Ballinger Mills, and the said John W. Hopkins that it was their duty to file an answer in this cause in Mrs. Hanscom's behalf," etc. The case went to trial upon plaintiffs' amended original petition filed January 26, 1936. In this pleading plaintiffs, for the first time, alleged a cause of action based upon the ten-year statute of limitations. It is now contended in behalf of Mrs. Hanscom that as to her the entire proceeding in the district court, including the trial and entry of judgment, is a nullity, because no citation on the amended petition was issued or served; it being further urged that no appearance was made by her by an attorney of her own selection. This assignment is overruled.

Article 1977 of the Revised Civil Statutes of 1925 was amended by the Forty-Second Legislature (Gen.Laws 1931, c. 213 p. 363 [Vernon's Ann.Civ.St. art. 1977]), and, among other things, with reference to suits where citation is served by publication, it was provided: "Whenever such petition has been duly filed and citation thereon has been duly served by publication as required by Article 2039 of the Revised Statutes of Texas of 1925, the plaintiff may, at any time prior to entering the decree by leave of Court first had and obtained file amended and/or supplemental pleadings that do not subject additional property to said suit without the necessity of reciting the defendants so cited as aforesaid."

It will be observed that but one qualification is attached to the enlarged right to amend. The amendment must not "subject

additional property to said suit." It does not forbid allegations of additional grounds of recovery. In this suit the same litigants and the same lands were involved before and after the filing of the amendment. No additional property was sought to be subjected to plaintiffs' claim. It is clear that the Legislature did not intend to leave the law as it had been. Amendment of pleadings within limitations was always possible. The amendment left but one limitation. Additional property must not be subjected to the suit.

■ It is a familiar rule of statutory construction that an exception makes plain the intent that the statute should apply in all cases not excepted. Federal Crude Oil Co. v. Yount-Lee Co., 122 Tex. 21, 52 S.W. (2d) 56, citing Sutherland on Statutory Construction (2d Ed.) § 494, p. 293; 25 R.C.L. 983; First Texas State Ins. Co. v. Smalley, 111 Tex. 68, 228 S.W. 550.

■ We think that Mr. Hopkins acted within the scope of his authority in engaging Mr. Mills and his firm to represent Mrs. Hanscom. To Mr. Hopkins had been delegated the duty of managing and looking after Mrs. Hanscom's lands in Galveston county. She was too far away to give them her personal attention. One portion of these lands and the prospective income therefrom were being threatened in a lawsuit brought by an adverse claimant. The agent, whose agency was general with respect to protecting his principal's rights in the land, would have been remiss in his duty had he not sought competent legal advice and acted upon it. Through him Mr. Mills was selected, and thereby became the attorney of Mrs. Hanscom's selection, and properly filed her original answer. 6 C.J., 631; Farrar v. Duncan, 29 La.Ann. 126.

■ Appellant Hanscom complains of the court's definition of "peaceable possession." The instruction was in the language of the statute. Article 5514. The assignment is overruled.

■ The court appended to issue No. 1 the following instructions:

"You are further instructed that in order to find that the plaintiff used the land in controversy as a pasture for grazing purposes, as that phrase is used in Special Issue No. 1, you must find and believe from a preponderance of the evidence that the plaintiff had the land in controversy, either alone or with other lands, completely enclosed for any continuous period of ten con-secutive years before the 16th day of December, 1934, with a substantial fence capable of retaining and excluding cattle of ordinary disposition, and that he pastured cattle within said enclosure, if any, for said period.

"You are further instructed that if you believe from a preponderance of the evidence that Dickinson Bayou, during the period inquired about, constituted a natural barrier to the passage of cattle, then it would not be necessary that plaintiff should fence the land actually bordering on said bayou in order to enclose same completely."

Each of defendants objected to the second paragraph of the instruction charging that (a) it was a comment upon the weight of the evidence; (b) it was confusing and misleading on acount of its failure to define "bordering on the bayou"; (c) that it failed to instruct the jury as to the meaning of the term "natural barrier"; and because the undisputed evidence showed that the land in controversy bordered on the "Dickinson Bayou," and the effect of the charge was to mislead the jury into believing that it was unnecessary to fence the other three sides of the land.

Under the circumstances, does the language used excuse the construction and maintenance of a fence along the line of the bayou only? If so, the instruction, while awkwardly phrased, does not constitute reversible error. The charge must be viewed as a whole, and interpreted in the light of its entire content, of the issues between the parties, and of the evidence relevant thereto. The language must be interpreted in the light of its entire setting. Theoretical perfection of expression as to each isolated sentence is not the end sought, else there would seldom be found unobjectionable instructions. Natural, not strained, constructions should prevail. We must discard the rule of construction applied by the clergyman who, when challenged to find scriptural authority for his vehement condemnation of the "Psyche knot"—a feminine arrangement of the hair that enchanted the eyes of a past generation—selected the last three words of the text, "Let him that is upon the housetop not come down," preaching triumphantly from the admonition, "Top knot (not) come down." "Top knot" construction should have no place in law. The whole situation before the jury must be considered, and we must credit the jurors with the possession of common sense. That the land bordered on the bayou had not been ques-

tioned. This all conceded. That there was no fence along the line of the bayou was likewise undisputed. With all of these facts before the jury, it was instructed that in order to find that the land was used as a "pasture for grazing purposes," it was necessary to find that it was "completely enclosed for any continuous period of ten consecutive years, etc., * * * with a substantial fence," etc. Now, since it was never asserted that there was a fence along the bayou, this instruction called for qualification, and it is evident that the intention of the court was to convey to the jury the idea that in the event the bayou constituted a natural barrier to the passage of cattle, no fence was necessary along the bayou boundary.

The entire evidence, direct and circumstantial, demonstrated that the bayou was sufficient as a "natural barrier"—a term that needed no definition. The owners to the east and west of the Hanscom tract left the bayou line unfenced, though their lands had been used for grazing. Nearly the whole time of the trial was taken up with examination and cross-examination as to the erection and maintenance of fences upon the other three boundaries of the tract. Two of defendants' three bills of exceptions incorporated portions of the argument of plaintiff's counsel stressing their claim that plaintiff "fenced" the land. The instruction complained of does not state that the tract bordering the bayou must not be "inclosed"; and when the expression used is illumined by all the attendant circumstances of contemporary instruction, contemporary construction evidenced by argument, and preceding evidence relating to the fences, there is slight justification, if any, for believing that the jury could have been confused or misled.

To describe that boundary as "the land *actually* bordering on said bayou" could not mislead men of ordinary intelligence under the circumstances.

We concur in the thought of the Galveston Court of Civil Appeals as expressed by Chief Justice Lane, in West v. Cashin, 83 S.W.(2d) 1001, 1003, 1006: "It is a familiar rule that a charge to a jury will be considered as a whole in determining such questions as whether or not it is misleading, upon the weight of the evidence or otherwise erroneous. It will be construed in view of the issues made by the pleadings and the evidence, and the words employed in instructions and issues must be taken in the ordinary and popular acceptation. The language will be given the plain, commonsense meaning it was evidently intended to convey when considered in the light of the charge as a whole, and one part of the charge may be looked to for the purpose of qualifying another. The cases are too numerous to review. The following are examples of cases where, as here, the claim was that a certain instruction or issue was misleading or upon the weight of the evidence. They are cases in which the appellate court held that it would look to the whole charge and the facts and issues of the case to determine whether or not the charge was misleading or upon the weight of the evidence, and in which having examined the issues complained of in the light of the whole charge, the appellate court found that there was no error: East Line & Red River Ry. Co. v. Smith, 65 Tex. 167, 170; Fort Worth & R. G. Ry. Co. v. Ross (Tex.Civ.App.) 54 S.W.(2d) 561, writ of error refused; McClung Construction Co. v. Muncy (Tex.Civ.App.) 65 S.W.(2d) 786, writ of error dismissed; Texas Indemnity Ins. Co. v. Wingo (Tex.Civ.App.) 47 S.W.(2d) 397, writ of error dismissed; Irvin v. Drake (Tex.Civ.App.) 16 S.W.(2d) 900; Fox v. Ry. Co. (Tex.Civ.App.) 186 S.W. 852."

Appellant Hanscom assigns as error argument of counsel for plaintiffs upon the question of peaceable possession. Her bill of exception No. 1 shows that her counsel objected to the argument, but does not state the ground of objection. We see nothing objectionable in the argument. The assignments complaining thereof are overruled.

In the course of the trial defendant Hanscom objected to certain argument of counsel for plaintiff upon the following grounds: (a) That it was an attempt to inform the jury of the effect of their answers to special issue No. 1; (b) that it was an attempt to create bias in favor of plaintiff, a resident of Galveston county, and prejudice against defendant Madie E. Hanscom, a resident of a foreign country; (c) that it was inflammatory. The bill of exceptions was qualified by the court by a quotation from a preceding argument made by counsel for Humble Oil & Refining Company, in which, while saying that he would not discuss the advisability or justness of laws of limitations, because their enactment was within the power of the legislature, and while he might feel that they did not at all times accomplish justice that was not a topic for discussion before the jury, yet the

type of the limitation claim made by a man might show whether he was worthy of belief, and, after stating a hypothetical case of two men taking possession of jurors' automobiles—one by mistake and the other deliberately with the intent "to acquire title by limitation"—argued forcefully that the first was more credible than the second, and closed with these words: "Now, suppose that this plaintiff in this case had gone out on that land and, under the honest belief that he was buying it and that it was part of that home place, had fenced it in and had kept that land for a sufficient length of time to acquire it by the title of limitation and then the true owner had come in and sought to recover it. If he had entered into the possession of that land honestly believing it to be his when the fact issue as to the length of time he has held it in possession becomes a disputed issue in the case, wouldn't his testimony be far more worthy of belief than at the present time when he says he knew it wasn't his and he put that fence around it and that he entered into it for the sole purpose of taking away from a man without due compensation property that he knew didn't belong to him?"

In reply counsel for plaintiffs argued the more meritorious conduct of one who buys a lot, erects a home, and thereby puts value into the adjoining land, raising cattle upon it, "producing and adding to the wealth of the county by raising the cattle, consuming food, patronizing industry, building up value as against somebody who goes to Paris, France, and stays away and neglects it." He closed with this language: "I am asking you to judge the case fairly and squarely according to the law and the evidence. Then no one can complain. You said you had no prejudice against anyone claiming land by limitation. I know you meant it when you said it. You raised your hands so to the judge. We ask that on behalf of Herbert Broughton, who honestly brought before you dates corroborative of every kind and character, a man who has improved and occupied the land as against someone who doesn't even live here, under the evidence."

Neither argument was altogether proper. Neither aided the jury greatly in determining whether the property had been inclosed for the full ten years, yet the pleadings were before the jury showing that Mrs. Hanscom was not a resident of the state, so that the argument placed nothing before the jury that it did not know before. It was reasonably provoked by the argument

of defendant's counsel, which put the limitation claimant in a class with an automobile thief. While in terms limiting the application of the language to the question of plaintiff's credibility as a witness, the natural effect of the argument would be to excite prejudice against him for pursuing a course of conduct permitted by law. Viewed as a reply to such an argument, the remarks of plaintiff's counsel seem to be a disquisition as to the superior claims of a trespasser who improves over a nonresident record-owner who neglects. It does not appear that Mrs. Hanscom was a foreigner, and no appeal was made to discriminate against her on account of any difference of nationality, if there were any. In fact, there was evidence she was a former resident of Galveston, and visited that city about ten years before the trial took place. The argument of defendant Oil Company's counsel indicated the effect the jury's finding would have upon the result. It was uttered before that of plaintiff's counsel. It was not objected to by counsel for Mrs. Hanscom. Assignments complaining of this argument are overruled.

 The Humble Oil & Refining Company sought, in the event judgment was for plaintiffs, to recover its expenditures incurred in drilling a well upon the property and producing, saving, and marketing the oil therefrom. Its right to recover depends upon its good faith—a question for the jury. Gulf Production Co. v. Spear, 125 Tex. 530, 84 S.W.(2d) 452; Houston Production Co. v. Mecom Oil Co. (Tex.Com. App.) 62 S.W.(2d) 75; Liles v. Thompson (Tex.Civ.App.) 85 S.W.(2d) 784. The expenditures were made after this suit was filed, and with notice of Broughton's claim as reflected by his pleadings. It sought and followed the advice of counsel who acted largely upon certain ex parte affidavits furnished him. Broughton was not asked about his claims. The jury found that the company did not act in good faith.

 As a result of the view we entertain, it is now our duty to render the judgment the trial court should have rendered upon the verdict. Smith v. El Paso & N. E. R. Co. (Tex.Civ.App.) 67 S.W.(2d) 362; Boyle v. Fisher, 103 S.W.(2d) 866, recently decided by this Court.

It is, therefore, ordered that the judgment be reversed, and judgment here rendered in favor of plaintiffs and intervener against all defendants for title and possession of the land sued for, and in favor of plaintiffs and intervener Luckel, as their

interests appear, against the Humble Oil & Refining Company for the sum of $14,594.16, being the agreed value of the oil extracted from the land up to January 1, 1936, with interest upon said sum at the rate of 6 per cent. per annum from said date, without prejudice to the right of plaintiffs and intervener to recover the value of oil produced from the land subsequent to said date, and without prejudice to the right of plaintiffs and intervener to recover the value of gas, or any product other than oil, produced at any time from the land.