[Civ. No. 2680.   Third Appellate District.—April 11, 1924.]

## THE RED RIVER LUMBER COMPANY (a Corporation), Respondent, v. E. M. NULL, Appellant.

[1] QUIETING TITLE—CONVEYANCE OF TIMBER—INTENT—KNOWLEDGE—EVIDENCE.—In this action to establish plaintiff's right to remove the timber standing and growing on the lands described in the complaint, in accordance with the terms of a written conveyance of such timber by one of defendant's predecessors to plaintiff, and to quiet plaintiff's title to said timber, the evidence showed that, although the deed to defendant contained no reference to the conveyance of the timber to plaintiff's predecessor, defendant's immediate grantors did not intend to sell the timber to defendant, a fact of which defendant had full knowledge at and prior to the transfer.

[2] ID. — VOID DEED — COLOR OF TITLE — ADVERSE POSSESSION — EVIDENCE.—In such action, although the deed conveying the timber to plaintiff's predecessor was void, the land having been covered by a homestead at the time such deed was executed, and the wife of the grantor not having joined in the execution thereof, such deed constituted color of title and, together with the evidence showing that plaintiff, and its predecessors, had exercised the usual occupation and control over the timber for more than five years subsequent to such conveyance, and had continuously paid the taxes thereon, justified the court in awarding plaintiff judgment as prayed for in the complaint.

---

2.  See 5 R. C. L. 657.

[3] ID.—TITLE TO TIMBER—SEVERANCE—SUFFICIENCY OF CONVEYANCE. Title to timber standing upon land is capable of being severed from the title to the land itself; and a writing purporting to convey to a person "his heirs and assigns, the sole and exclusive right to cut, fell, remove and carry away all . . . of the trees standing or down wood and timber growing, being, standing or down, or hereafter to grow, be or stand" upon certain described real property, is sufficient to constitute a transfer of title to the timber upon said real property.

(1) 32 **Cyc.**, p. 1372.    (2) 2 **C. J.**, p. 186, sec. 357.    (3) 25 **Cyc.**, p. 1549.

APPEAL from a judgment of the Superior Court of Shasta County. Walter E. Herzinger, Judge. Affirmed.

The facts are stated in the opinion of the court.

McCoy & Gans and Carter & Smith for Appellant.

Carr & Kennedy for Respondent.

FINCH, P. J.—In this action the plaintiff prayed for a decree establishing its right to remove the timber standing and growing on the lands described in the complaint, in accordance with the terms of a written conveyance of such timber to plaintiff, and quieting its title to said timber. The defendant denied plaintiff's right to the timber upon that part of the described lands hereinafter referred to as the homestead and disclaimed any interest in the timber upon the remainder. The court gave judgment as prayed for in the complaint and the defendant appeals.

During the year 1879 J. C. La Tour and his wife, Arrena La Tour, resided upon the lands in controversy. November 26th of that year La Tour executed and recorded his declaration, in due form, claiming such lands, and other lands, as a family homestead. He and his wife continued to reside on the land covered by the homestead until the year 1889, when they removed to another place where they thereafter resided. April 11, 1901, La Tour executed and delivered to his wife a deed purporting to convey to her the lands described in the complaint and containing the following

3.   Deeds to timber, and their effect, note, 128 **Am. St. Rep.** 868. See, also, 16 **Cal. Jur.** 680; 17 **R. C. L.** 1076.

clause: "The condition of this deed is such that it is to be recorded at or after my death, and then to be in full force and effect, otherwise to be null and void." The deed was recorded October 30, 1906. May 29, 1905, La Tour executed and delivered his deed purporting to convey to M. C. Thatcher, "his heirs and assigns, the sole and exclusive right to cut, fell, remove and carry away all, or so much as said second party may desire, of the trees standing or down wood and timber growing, being, standing or down, or hereafter to grow, be or stand, except what cedar timber first party may require for making posts or rails for keeping up the fence upon the within described land, and such dead timber as first party may need for fuel to use in dwelling house on all those certain lots (describing the lands set out in the complaint) for and during the full period of twenty-five years from and after the date hereof, . . . together with the right to enter on said premises, and every part thereof, and to pass over and across the same, in such manner and with such appliances as shall be deemed by said second party convenient in the cutting or removing of any of the trees, down or standing wood or timber, and to do such other and further acts and things on said premises as shall be convenient or reasonably necessary to the full and complete enjoyment by the said party of the second part, or his assigns, of the rights hereby granted, to said trees, standing wood and timber." La Tour died in October, 1906. June 13, 1907, Arrena La Tour conveyed the land to C. A. La Tour, the son of herself and J. C. La Tour, the deed containing no reference to the sale of the timber to Thatcher. February 18, 1911, C. A. La Tour conveyed the land to his wife, this deed also being silent as to the deed to Thatcher. May 22, 1912, Thatcher executed and delivered to plaintiff his warranty deed purporting to convey the timber on the land in accordance with the terms of the deed of J. C. La Tour to him. April 29, 1915, C. A. La Tour and his wife conveyed the land to defendant. The deed contained the following clause: "Subject to that certain deed of right of way dated May 29th, 1905, and recorded May 31, 1905, in book 83 of deeds, page 590, records of said Shasta County; also subject to whatever rights and privileges may have been conveyed by that certain deed dated May 29th, 1905, and recorded June 2nd, 1905, in book 83 of deeds, page 613"—the Thatcher deed.

Admittedly the deed from J. C. La Tour to Thatcher was void, there being a homestead on the place at the time the deed was executed and the wife of the grantor not joining in the execution thereof. The deed, however, constituted color of title. (*Donnelly* v. *Tregaskis,* 154 Cal. 261 [97 Pac. 421]; 2 C. J. 186; *Goodrich* v. *Mortimer,* 44 Cal. App. 576 [186 Pac. 844].) Respondent contends and the court found that plaintiff and its predecessor in interest, Thatcher, had acquired title by adverse possession. The La Tours never claimed any interest in the timber after the execution of the deed to Thatcher. C. A. La Tour negotiated the sale of the land to defendant. He testified: "I told Mr. Null, when he was talking about taking the place over, . . . that the timber belonged to the Thatcher Lumber Company, or Mark Thatcher. . . . He said that he understood that. . . . I never claimed the timber." The defendant testified: "I came here and examined the record myself, . . . and found the state homestead. I also went over the records myself for abandonment of state homesteads, and found no abandonment of this land. . . . Chris La Tour may have told me, or he may not have told me, I think he did tell me, however, the timber had been sold to the Thatchers for twenty-five years. : . . I have no recollection that I told La Tour anything about the state homestead; that was his affair; I was looking out for my side of it; he was looking out for his. . . . Really I did not make La Tour's side of the trade, . . . I traded for myself." The deed to defendant was prepared by his attorney. C. A. La Tour testified that after the delivery of the deed the defendant said to him: "Chris, I know you rather see me prosper than the Red River Lumber Company; . . . I am going to claim the timber on those three forties in section 2, . . . because your mother had a state homestead."

[1] From the foregoing it clearly appears that C. A. La Tour, acting for himself and his wife in the sale of the land, did not intend to sell the timber to defendant, a fact of which the defendant had full knowledge at and prior to the transfer. If this were a suit to reform the deed so as to express the true intention of the parties, further consideration of the case would be unnecessary, but plaintiff's right of recovery in this action must be based upon title in itself. [2] It then becomes necessary to determine whether

there is sufficient evidence to show title by adverse possession.

M. C. Thatcher and other owners of timber pooled their interests and operated a sawmill in the vicinity of the La Tour land under the name of the Thatcher Lumber Company. He testified that after the purchase of the timber in dispute he went over the La Tour land twice a year during the years 1905 and 1906; that in 1907 he hauled therefrom two thousand shakes and "had some logs cut and hauled"; that in 1908 he "went over the land several times during the summer and the same during 1909, 1910 and 1911 and 1912"; that his purpose in going over the land was "to see that there was no trespassing, that there were no camp fires, to see if there was any timber that should have been taken off"; that he claimed to own the timber during those years; that in 1910 C. A. La Tour "wanted to buy some timber for shakes" but that the witness "did not agree to it"; that his brother and nephew, who were interested with him in the operations of the Thatcher Lumber Company, "between 1905 and 1912, went upon and over or worked upon this timber on this land." H. W. Knapp, one of Thatcher's associates, testified: "We had a mill ditch that headed on this land, and we had to make weekly trips, sometimes two or three a week to the head of this ditch, and in most every case, was over most all of the land; part of it, probably forty or fifty times a year, I was on that land, on that one piece; not to look it over every time." He testified that in 1907 it was necessary on two occasions to have employees fight fires, started by operations of the company, to keep them off the La Tour and other lands; that during the years 1908 to 1912, inclusive, he went over the land two or three times a year to "look out for dead timber, down timber and forest fires" and trespassers. A. C. Thatcher testified that he hauled two loads of logs off the land for the company in May, 1907, using a steam tractor and two trucks; that he "widened out" an old shake road over which to haul the logs; that he fought fires in 1907 and 1908 and that the latter fire was not caused by the operations of the company. Alexander Thatcher testified that from 1905 to 1912 he rode over the land "as much as once a month of each year" from the first of April to the last of October, that he was handling

cattle and "aimed to look after the timber" and "watch for fires"; that in 1907 C. A. La Tour "informed us. . . a big tree fell out on the edge of his meadow . . . and we ought to remove it." Earl S. Thatcher testified that during the latter part of October, 1907, "at two different times" he hauled logs off the La Tour land for the company. The land described in the conveyance to Thatcher and in that to defendant is in part timber land and in part meadows. Only a part of the land is fenced. C. A. La Tour resided on the premises during some of the summer months. The evidence justifies the following statement contained in the opinion of the trial court:

"The lands in question . . . are rough, mountainous timber lands valuable chiefly, if not solely for the timber thereon, which consists of a heavy growth of pine, fir and spruce with a heavy growth of underbrush. From the time that M. C. Thatcher secured the deed to said timber on May 29, 1905, the said M. C. Thatcher and members of the firm of Thatcher Lumber Company and its employees began and continued during each year thereafter and to May 12, 1912, a period of nearly seven years, to patrol said lands, upon which said timber is situated, for the prevention of trespassing and for the protection of said timber from fire; that in 1907 a road was built over a part of said lands by Thatcher, and that Thatcher cut and removed therefrom two thousand shakes, and also cut and hauled logs therefrom; that in .1908 a fire threatened said timber upon said land, and Thatcher, with a crew of men from the Thatcher Lumber Company, fought said fire for the purpose of preventing the fire reaching and destroying the timber upon the lands in question; that from time to time, as fires occurred and threatened to invade the said lands, bodies of fire fighters were used by Thatcher in preserving said timber from destruction. The timber upon said land was separately assessed to M. C. Thatcher for the year 1905, and each year thereafter up to and including the year 1912, and the taxes levied upon said timber during each of said years was paid by Thatcher.

"That from the time of the execution of said deed to Thatcher and up to May 12, 1912, neither James C. La Tour Arrena La Tour, or any other person occupied said lands, or any part thereof, or claimed the timber thereon, save and except the said M. C. Thatcher and the Thatcher Lum-

ber Company and Chris A. La Tour; but that said Chris A. La Tour at no time since the execution and delivery of the deed to M. C. Thatcher claimed or asserted ownership of said timber; that since May 12, 1912, the date of the deed to plaintiff herein, the said plaintiff has by its agents patrolled said lands, herein concerned, for the purpose of preventing fires and trespassing, and that said timber for each year from 1912 to the inception of this action have been assessed separately to said plaintiff and the taxes paid thereon by plaintiff; although the defendants in this action had the said land, together with the timber thereon, assessed to him after he acquired his deed thereto and paid the taxes assessed thereon.''

The facts herein are similar to those in the case of *Cousino* v. *Western Shore Lumber Co.,* 179 Cal. 1, 6 [175 Pac. 406, 408], except that in that case the defendant claimed title to the land as well as to the timber thereon. The court said: ''The lands, as we have seen, were timber lands. The defendant, who was thus the occupant of said lands, was a lumber company, and the ordinary and eventual use to which said lands were to be put was that of the cutting, logging, and milling of the timber thereon; and this being so, we think the possession of the defendant, as indicated by its foregoing assertion of control over said property, based as it was upon a claim of title founded upon a written instrument, was sufficient to constitute adverse possession for the required statutory period under subdivision 3 of section 323 of the Code of Civil Procedure.'' A lumber company does not ordinarily cut timber from all of its holdings at the same time, and prior to the time at which it commences such cutting upon a given parcel of land the usual occupation and control thereof are of the character here shown. It must be held that the evidence sufficiently shows title by adverse possession in the plaintiff.

[3] Appellant contends that the deed to Thatcher does not purport to convey title to the timber in dispute, but only ''the right to cut, fell, remove and carry away'' trees and timber. In *Bolland* v. *O'Neal,* 81 Minn. 15 [83 Am. St. Rep. 363, 83 N. W. 471], the conveyance under consideration granted ''the right, privilege, and permission'' to enter upon the lands described in the instrument and ''cut and remove from said lands . . . all the pine timber

standing or being thereon." The court said: "It was in effect a conveyance of the pine, with the privilege to go upon the premises within a stipulated time and remove it. . . . Such a deed is a conveyance of an interest in real estate." Title to timber standing upon land is capable of being severed from the title to the land itself. (*Gibbs* v. *Peterson*, 163 Cal. 758 [127 Pac. 62]; *Sears* v. *Ackerman*, 138 Cal. 583 [72 Pac. 171]; *Ciapusci* v. *Clark*, 12 Cal. App. 44 [106 Pac. 436]; *Gazos Creek Mill etc. Co.* v. *Coburn*, 8 Cal. App. 150 [96 Pac. 359].) In *Fairbanks* v. *San Francisco & N. P. Ry. Co.*, 115 Cal. 579, 583 [47 Pac. 450, 451], it is said: "For the purposes of adverse possession, and the invocation of the statute of limitations, there may be cleavage of corporeal real estate horizontally as well as vertically." This rule has been held applicable in cases of minerals, oil, gas, and buildings. (1 R. C. L. 738; 2 C. J. 227.) No reason appears why the same rule should not govern in the case of standing trees. There are no equities to support defendant's claim of title to the timber in controversy. He knew that La Tour did not intend to sell it to him and it may fairly be said that the judgment awards him everything that he purchased.

The judgment is affirmed.

Hart, J., and Plummer, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 9, 1924.

All the Justices concurred.