[Civ. No. 22733. First Dist., Div. Three. Apr. 28, 1966.]

ELWOOD BUFFUM et al., Plaintiffs, Cross-defendants and Appellants, v. TEXACO, INC., et al., Defendants, Cross-complainants and Respondents.

Mathews & Traverse and Francis B. Mathews for Plaintiffs, Cross-defendants and Appellants.

Hill & Hill, Victor M. Corbett and Clayton O. Rost for Defendants, Cross-complainants and Respondents.

SALSMAN, J.—Appellants are Elwood Buffum individually, and others as trustees and last directors of the Humboldt Milling Co., Inc., a corporation that was dissolved before the commencement of this action. They filed a complaint seeking to quiet title to all of the merchantable timber on certain real property. Respondents claimed title to both land and timber, and filed a cross-complaint in the action praying that their title be quieted.

The facts are undisputed. The land consists of 80 acres located in Humboldt County. It was once owned by Nicholas

Tompkins. In 1902 Tompkins executed a deed, granting to the Humboldt Milling Company "all of the timber standing, lying and contained. . . ." on the 80-acre parcel, together with a ". . . right of way over said land to get to and remove said timber." Appellants claim under that deed. In 1907 Tompkins conveyed the 80 acres to Alberto Robinson, reciting in the deed that the conveyance was ". . . subject to a deed made to the Humboldt Milling Company, a corporation . . . wherein [Tompkins] . . . sells all of the timber on said land and also a right of way for a road to remove said timber." Respondents, through mesne conveyances, claim under Tompkins' deed to Robinson.

All of the merchantable timber on the land in 1902 when Tompkins deeded to appellants has been removed, but appellants contend they are entitled to the second growth timber now on the land. Thus the sole issue in the case concerns the proper interpretation of the language in Tompkins' deed to the Humboldt Milling Company. Appellants contend they have a perpetual right to harvest timber from the land while respondents contend that the milling company's right was only to harvest the timber on the land at the time the grant was made, and since that timber was harvested long ago, appellants' rights have been exhausted.

The construction of the deed from Tompkins to the Humboldt Milling Company presents a pure matter of law. (*Sepulveda* v. *Sepulveda,* 77 Cal. 605, 608 [20 P. 145].) ▇ In interpreting the instrument we must seek to ascertain the intention of the parties at the time the deed was executed, and if possible give effect to their mutual intentions. (Civ. Code, § 1636; *Marlin* v. *Robinson,* 123 Cal.App. 373, 375 [11 P.2d 70]; *Hay* v. *Allen,* 112 Cal.App.2d 676, 681 [247 P.2d 94].) ▇ The language of the instrument is to be first considered, and the intention of the parties gathered therefrom, before resorting to extrinsic evidence (*Joerger* v. *Pacific Gas & Electric Co.,* 207 Cal. 8, 32 [276 P. 1017]) but the instrument may be explained by reference to the circumstances under which it was made, and the matter to which it relates. (Civ. Code, § 1647.)

▇ It is well settled that a fee interest in timber standing upon real property may be conveyed apart from title to the property upon which the timber stands. (*Peterson* v. *Gibbs,* 147 Cal. 1, 7 [81 P. 121, 109 Am.St.Rep. 107]; *Red River Lumber Co.* v. *Null,* 66 Cal.App. 499, 506 [226 P. 812], and cases cited.) Here, of course, the problem is to determine

whether Tompkins intended to convey to the Humboldt Milling Company a fee interest in only such timber as was merchantable in 1902, as respondents assert, or whether he intended to grant to the milling company a fee interest in all the timber growing and to be grown on the property in perpetuity, as appellants claim.

As we have seen, the deed conveys ". . . all of the timber . . ." on the property in question. It is generally held that the word "timber" unless modified or controlled by other expressions in an instrument means trees fit to be used for lumber in building or construction. (*Crain* v. *Hoefling*, 56 Cal.App.2d 396, 405 [132 P.2d 882], and cases cited. See also Words and Phrases, Vol. 41-A, Timber, and cases cited.) Thus the word "timber" as used in a deed or contract, unless modified, means merchantable timber. Here, appellants' expert witness testified that in 1902 the term "timber" meant ". . . large, old growth trees." There was also testimony that in 1902 there was no market for second growth trees. Thus, when Tompkins granted ". . . all of the timber. . . ." on the 80-acre tract, it is clear that he intended to convey to the Humboldt Milling Company, and the latter intended to acquire, all of the merchantable timber then on the property. Since the Tompkins deed was limited to merchantable timber, and all of that timber as it existed in 1902 was removed, appellants have no further rights under their deed.

The conclusion that appellants have exhausted all of their rights under the Tompkins deed of 1902 is supported on another ground. There is a well recognized distinction between a grant of "timber" and a grant of "timber rights". Where, as here, the grant is limited to "timber", the grantee's rights are exhausted when the timber growing upon the land at the time of the grant has been harvested. But if the grant is of "timber rights", the grantee is not so limited, but may harvest successive crops of timber as they mature. This rule was recognized and applied in *Crain* v. *Hoefling, supra,* 56 Cal.App.2d 396, 405, and cases cited. (See also 31 Cal.Jur.2d, Logs and Timber, § 14, p. 735.) Appellants acknowledge this rule, but urge that their deed falls within the class of deeds granting timber rights because the grant was made of timber "forever". We reject this contention. The Tompkins deed, insofar as it granted appellants "all timber standing, lying and contained. . . ." on the land, operated in praesenti and not in futuro. It passed title only to the timber then growing upon the land. Appellants were

entitled to have that timber and to hold it, or its proceeds "forever". But their deed, since it granted them only the timber and not the timber rights, cannot be held to have conveyed trees or timber not in existence at the time of the execution and delivery of the deed.

█ Appellants also argue that respondents are estopped to assert any right to the second growth timber now standing upon the 80-acre parcel. They base this argument on the proposition that unless a grant deed contains some reservation or exception, it operates to pass title in fee, and the grantor is estopped from thereafter claiming any right in the property conveyed. (See *Taylor* v. *Avila*, 175 Cal. 203, 206 [165 P. 533].) The rule appellants state is not disputed, but it has no application here. As we have construed the Tompkins deed, it passed title only to the merchantable timber upon the described parcel as of the date of the deed. Respondents claim no right or title to that timber or its proceeds. If they were to assert some right in property granted to appellants by Tompkins perhaps they would be estopped to assert such claims, but they are not estopped from claiming title to property never granted by Tompkins to appellants.

█ Finally appellants contend that certain extrinsic evidence establishes that Tompkins intended by his 1902 deed to grant a perpetual right to the Humboldt Milling Company to harvest timber from the lands covered by the deed. The first bit of extrinsic evidence upon which appellants rely is an agreement between Tompkins and J. W. Rowley, John Rowley, W. A. Rowley and George Sams, whereby Tompkins gave such parties the right to cut timber for shingles, but limited their right to a period of seven years. The second item of such evidence is the grant deed made by Tompkins to Alberto Robinson in 1907. In this deed Tompkins noted that his conveyance was ". . . subject to a deed made to the Humboldt Milling Company, a corporation, dated October 27, 1902 . . . wherein [Tompkins] sells all of the timber on said land. . . ." Appellants argue that Tompkins' agreement with the Rowleys and Sams shows that he was aware of the fact that he could limit the right to remove timber from his lands to a period of years and since he did not do so in his 1902 deed to the Humboldt Milling Company he thereby disclosed his intention to grant a right to remove timber in perpetuity. This view is supported, appellants say, by the language in Tompkins' 1907 deed to Alberto Robinson, in which Tompkins called attention to the rights of the Humboldt Milling Company.

We do not think the extrinsic evidence mentioned supports the construction of Tompkins' 1902 deed for which appellants contend. The language of the 1902 deed is simple and direct—it grants to the grantee a fee interest in "all of the timber standing, lying and contained" on the described land. It may readily be conceded that the grantor knew that he could limit the grantee's right of removal to a period of years, yet the fact that he did not do so does not compel the conclusion that the future growth of timber on the land was also to belong to the grantee. The deed speaks of the present, not of the future. The fact that the grantor may have known that he could limit the grantee's right of removal to a period of years is not controlling, and is indeed immaterial.

The Tompkins deed of 1907 to Alberto Robinson, upon which appellants also rely as disclosing the intentions of the grantor, merely calls attention to the rights of the Humboldt Milling Company under the grantor's 1902 deed. The evidence in our record does not show when the merchantable timber actually was removed, whether before or after Tompkins' deed to Alberto Robinson. It would be entirely proper, and consistent with fair dealing, however, for Tompkins to call his grantee's attention to the fact that he had previously sold the merchantable timber on the property to the Humboldt Milling Company, especially if all of that timber had not been harvested in 1907. Thus we find nothing in the extrinsic evidence mentioned to support appellants' construction of Tompkins' deed to the Humboldt Milling Company. As we construe that deed, it conveyed only the merchantable timber standing and lying on the described lands at the time the deed was executed. We see no intention on the part of the grantor, expressed or implied from the extrinsic evidence, which suggests that the Humboldt Milling Company was to have a right in perpetuity to harvest the new growth of timber on the described lands.

Judgment affirmed.

Draper, P. J., and Devine, J., concurred.