Filed 9/15/22  Scheiber Ranch Properties v. City of Lincoln CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| SCHEIBER RANCH PROPERTIES, LLP, et al., | |
| Plaintiffs and Appellants, | C091038 |
| v. | (Super. Ct. No. S-CV-0041269) |
| CITY OF LINCOLN, | |
| Defendant and Respondent. | |
| GREG RISSE, Individually and as Trustee, etc., | C091148 |
| Plaintiff and Appellant, | (Super. Ct. No. S-CV-0043127) |
| v. | |
| CITY OF LINCOLN, | |
| Defendant and Respondent. | |

Scheiber Ranch Properties, LP and Albert Scheiber (collectively Scheiber) and the Greg and Michelle Risse Trust and Greg Risse (collectively Risse) sought declaratory relief against the City of Lincoln (Lincoln) regarding rights to pump groundwater.

1

The trial court sustained Lincoln's demurrer without leave to amend, ruling the declaratory action was not ripe.

Scheiber and Risse now challenge the trial court's ruling. Finding no error, we will affirm the judgments.

BACKGROUND

Scheiber's first amended complaint alleged the following:

Scheiber Ranch Properties, LP owned and operated about 325 acres of agricultural land in Placer County, west of Lincoln. Albert Scheiber was a partner of Scheiber Ranch Properties, LP. There were three wells on the property, above the Sacramento Valley Groundwater Basin, North American Sub-basin (Basin).

Groundwater levels in the Basin in the areas near the Scheiber property were in decline. Lincoln relied more heavily on groundwater resources from the Basin via existing wells during times of drought.

Lincoln approved large development projects that contemplated the construction of several thousand new homes in an area west of Lincoln over the next decade. It also approved plans to construct at least six new wells to pump groundwater from the Basin to supply water to the development projects. Scheiber believed Lincoln would construct new wells within the next one to two years or sooner and Lincoln planned to approve additional wells within the next two to five years. Scheiber was informed and believed that at least three of the new Lincoln wells would be located within a mile of the Scheiber property and wells. Scheiber was informed and believed the new Lincoln wells would negatively impact the area of the Basin underlying the Scheiber property and would potentially negatively impact Scheiber's ability to pump groundwater for use on their property.

Scheiber alleged there was limited surplus water available in the area of the Basin underlying the Scheiber property for appropriation by Lincoln and the availability was not in amounts anticipated to be pumped by Lincoln. Scheiber sought judicial

2

declarations relating to Lincoln's right to pump groundwater from the Basin via the new Lincoln wells.

Risse's complaint made similar allegations about Lincoln's plans to build new wells to pump groundwater from the Basin. Risse further alleged it owned and operated about 75 acres of agricultural land in Placer County, west of Lincoln. It had six wells on the property. Risse pumped groundwater from the Basin as overlying users for domestic and agricultural purposes. Lincoln's proposed new wells would be located near the Risse property. Risse was informed and believed that a certain amount of water pumped by some of its wells included underflow from the Auburn and Markham Ravines, and Risse pumped that water as an overlying owner. Risse was informed and believed the new Lincoln wells would negatively impact the area of the groundwater Basin underlying the Risse property and Risse's ability to pump groundwater for use on its property. Risse alleged the new Lincoln wells would adversely impact the underflow of the Markham and Auburn Ravines.

Risse sought judicial declarations relating to Lincoln's right to pump groundwater from the Basin via the new Lincoln wells.

Lincoln filed demurrers to the Scheiber and Risse complaints. Lincoln argued, among other things, that the Scheiber and Risse claims were not ripe for adjudication because the complaints alleged only Lincoln's potential plans to build new wells, plans that might never come to fruition.

The trial court sustained the demurrers without leave to amend. It ruled, among other things, that the claims were not ripe for adjudication because the proposed Lincoln wells had not been built. The trial court denied leave to amend because Scheiber and Risse had not shown that the defects in their pleadings could be cured.

We consolidated the appeals pursuant to a stipulation by the parties.

## STANDARD OF REVIEW

A demurrer tests the legal sufficiency of the challenged pleading. (*Milligan v. Golden Gate Bridge Highway & Transportation Dist*. (2004) 120 Cal.App.4th 1, 5 (*Milligan*).) We independently evaluate the pleading, construing it liberally, giving it a reasonable interpretation, reading it as a whole and viewing its parts in context. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; *Milligan*, at pp. 5-6.) We assume the truth of all material facts properly pleaded or implied but do not assume the truth of contentions, deductions or conclusions of law. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081; *Milligan*, at p. 5.) Viewing matters through this prism, we determine de novo whether the factual allegations of the challenged pleading are adequate to state a cause of action under any legal theory. (*Milligan*, at p. 6.) The appellant bears the burden of demonstrating that the demurrer was sustained erroneously. (*Friends of Shingle Springs Interchange, Inc. v. County of El Dorado* (2011) 200 Cal.App.4th 1470, 1485.)

We review a trial court's decision to deny leave to amend for abuse of discretion. (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.) If the challenged pleading could be amended to state a cause of action, the trial court abused its discretion in denying leave to amend and we will reverse; if not, there has been no abuse of discretion and we will affirm. (*Ibid*.) "It is the plaintiff's burden on appeal to show in what manner it would be possible to amend a complaint to change the legal effect of the pleading; we otherwise presume the pleading has stated its allegations as favorably as possible." (*Fuller v. First Franklin Financial Corp*. (2013) 216 Cal.App.4th 955, 962.) "To meet this burden, a plaintiff must submit a proposed amended complaint or, on appeal, enumerate the facts and demonstrate how those facts establish a cause of action. [Citations.] Absent such a showing, the appellate court cannot assess whether or not the trial court abused its discretion by denying leave to amend." (*Cantu v. Resolution Trust Corp*. (1992) 4 Cal.App.4th 857, 890.)

DISCUSSION

Scheiber and Risse argue the trial court erred in finding their actions not ripe for adjudication. They say overlying rights owners may obtain a judicial determination that their right to groundwater is paramount to the rights of an appropriator like Lincoln before Lincoln constructs new wells to pump groundwater. They contend an action to determine priority is ripe for adjudication whenever an overlying rights owner has reasonable cause to believe that an approved but still unbuilt program might affect the overlying rights owner.

A

California courts will decide only justiciable controversies. (*City of Santa Maria v. Adam* (2019) 43 Cal.App.5th 152, 161-162 (*Santa Maria II*).) Courts will not entertain an action which is not founded on an actual controversy, because the proper role of the judiciary does not extend to the resolution of abstract differences of legal opinion. (*Id*. at p. 162.) The ripeness doctrine recognizes that judicial decision making is best conducted in the context of an actual set of facts so that the issues will be framed with sufficient definiteness to enable the court to make a decree finally disposing of the controversy. (*Ibid*.)

A controversy is ripe for adjudication when the facts have sufficiently congealed to permit an intelligent and useful decision, and when withholding a decision would result in hardship to the parties. (*Santa Maria II, supra*, 43 Cal.App.5th at p. 162.) We review an issue's ripeness de novo. (*Ibid*.)

B

Generally speaking, an overlying right is the right of the landowner to take water from the ground underneath for use on his or her land within the basin or watershed. (*City of Pasadena v. City of Alhambra* (1949) 33 Cal.2d 908, 925.) Scheiber and Risse alleged they had overlying rights to pump groundwater from the Basin.

5

An appropriative right is the right to take water for other than overlying uses. (*City of Pasadena v. City of Alhambra, supra*, 33 Cal.2d at p. 925.) Water producers or entities that take water and export or use it for municipal purposes or for sale to the public are appropriators. (*Id.* at p. 927.) " 'Public interest requires that there be the greatest number of beneficial users which the supply can yield, and water may be appropriated for beneficial use subject to the rights of those who have a lawful priority [citation]. Any water not needed for the reasonable beneficial use of those having prior rights is . . . surplus water and may rightly be appropriated on privately owned land for non-overlying use, such as devotion to public use or exportation beyond the basin or watershed [citation].' " (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th at pp. 278-279.) An appropriator is limited to the remainder of the safe yield in the underground basin, which is the maximum amount of water that could be extracted annually, year after year, without eventually depleting the underground basin. (*Id.* at p. 279.) An overdraft results when extractions exceed the safe yield. (*Ibid.*) Scheiber and Risse alleged that Lincoln's right to pump groundwater from the Basin via the new Lincoln wells, if any, would be appropriative.

In other words, an overlying rights owner has the right to pump water from the ground under his or her land for use on the land. (*City of Barstow v. Mojave Water Agency* (2000) 23 Cal.4th 1224, 1253.) When there is surplus water, an appropriator may take the surplus without compensation and the appropriation may not be enjoined. (*Id.* at pp. 1241, 1243, 1245.) But when water is insufficient to meet the needs of all users, overlying rights owners have priority over appropriators, with an exception for prescriptive rights not applicable here. However, overlying rights owners are limited to their proportionate fair share of the amount available based on their reasonable needs. (*Id.* at p. 1253.) After considering the priority of water rights, a court may limit a party's rights to reasonable and beneficial uses. (*Id.* at p. 1240; Cal. Const., art. X, § 2.) Determining what is a reasonable use is a question of fact to be determined from the

6

circumstances of each case. (*Tulare Irrigation Dist. v. Lindsay-Strathmore Irrigation Dist.* (1935) 3 Cal.2d 489, 567 [what may be a reasonable beneficial use where water is in excess of all needs would not be a reasonable beneficial use in an area of great scarcity and great need, and what is a beneficial use at one time may, because of changed conditions, become a waste of water at a later time].)

C

Scheiber's first cause of action sought a declaration that its right to pump groundwater from the Basin had priority over the new Lincoln wells. Scheiber's second cause of action sought a declaration that Lincoln's right to pump groundwater from the Basin via the new wells, if any, would be as an appropriator only and Lincoln would be entitled to pump surplus water only. Scheiber's third cause of action sought a declaration that Lincoln had not acquired any prescriptive rights to groundwater via the new wells.

Risse sought similar judicial declarations, adding that Lincoln had no right to pump or interfere with the underflow of the Markham and Auburn Ravines, and Lincoln's plan to triple groundwater pumping from the Basin using new Lincoln wells during periods of drought would be unreasonable.

In *Santa Maria II*, the appellate court held that a motion to confirm overlying rights against future prescription by appropriators was not ripe for adjudication. (*Santa Maria II, supra*, 43 Cal.App.5th at pp. 162-165.) It said resolution of the issue would require the appellate court to speculate about hypothetical scenarios because there was no evidence of an overdraft. (*Id.* at p. 163.) It observed that it was possible the cross-defendants would never violate the cross-complainants' overlying rights, and resolution of the motion would require the appellate court to speculate about facts surrounding an appropriator's hypothetical taking of water. (*Ibid.*)

In comparison, in *Tehachapi-Cummings County Water Dist. v. Armstrong* (1975) 49 Cal.App.3d 992, 998-99, the appellate court found an actual controversy relating to the rights of overlying owners where "wells were deepened, some had to be abandoned,

the cost of pumping water increased throughout the basin, and the peripheral, watered, alluvial areas underwent a contraction" as a result of continued overdraft of the basin.

Here, the claims in the complaint are not ripe for adjudication because although the complaints referred to existing Lincoln-owned wells, Scheiber and Risse sought declaratory relief relating to the anticipated taking of water from new (unbuilt) Lincoln wells. Appropriative rights depend on the actual taking of water. (*City of Barstow v. Mojave Water Agency, supra*, 23 Cal.4th at p. 1241.) Resolution of the issues in this case would require the courts to speculate about hypothetical scenarios. A determination regarding the priority of Scheiber and Risse's overlying rights to groundwater vis-a-vis the appropriative rights of Lincoln via the new wells, and the scope and reasonableness of groundwater pumping via the new Lincoln wells, would require the courts to assume hypothetical future appropriations, from new wells that may never be built, under unknown future supply and demand conditions, to serve development projects allegedly planned to be built over the next decade. In addition, Scheiber and Risse do not demonstrate that they will suffer hardship in the absence of an immediate judicial determination. Scheiber and Risse did not allege facts showing that their concerns about Lincoln's plan to pump groundwater from yet-to-be-constructed wells require action at the present time. Moreover, Scheiber and Risse did not demonstrate how they can amend their pleadings to allege more than speculative appropriation via the planned new wells.

Among other things, Scheiber and Risse sought a declaration that Lincoln had not acquired any prescriptive rights to groundwater by way of the new Lincoln wells. But there is no prescriptive right without an appropriation of water. (*Central and West Basin Water Replenishment Dist. v. Southern Cal. Water Co.* (2003) 109 Cal.App.4th 891, 909.) A claim of prescription requires a finding that the defendant diverted some definite quantity of water. (*Logan v. Guichard* (1911) 159 Cal. 592, 597; *Hayes v. Silver Creek & Panoche Land & Water Co.* (1902) 136 Cal. 238, 240; *Crain v. Hoefling* (1942) 56 Cal.App.2d 396, 402-404; *Willits Water & Power Co. v. Landrum* (1918) 38 Cal.App.

8

164, 171 [citing Civ. Code, § 806]; see *California Water Service Co. v. Edward Sidebotham & Son, Inc.* (1964) 224 Cal.App.2d 715, 727-728 [stating that prescriptive rights are measured by the amounts of the takings for the full prescriptive period]; *Eden Township Water Dist. v. City of Hayward* (1933) 218 Cal. 634, 637-639 [holding that prescriptive right to pump water and divert it from an underground water supply should be limited to the greatest amount diverted and used in any one calendar year of the prescriptive period].)  Scheiber and Risse's pleadings do not allege any appropriation of water via the new Lincoln wells.  Scheiber and Risse do not state how they can amend their pleadings to allege an appropriation via the new Lincoln wells.

Under the circumstances, the trial court did not err in sustaining the demurrers without leave to amend.

DISPOSITION

The judgments are affirmed.


                                                          /S/
                                                    MAURO, J.


We concur:


      /S/
ROBIE, Acting P. J.


      /S/
DUARTE, J.

9